UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| Abby Lynn Portner, Michelle Crowley, and Erin Gronvall,<br><br>        Plaintiffs,<br>vs.<br><br>CICA SA-BO, Inc., a domestic corporation, d/b/a Great Clips,<br><br>        Defendant. | Court File No. 04-1377 MJD/JGL<br><br>**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

# INTRODUCTION

Defendant CICA SA-BO, Inc. (d/b/a/ "Great Clips") submits this Reply Memorandum in Support of its Motion for Summary Judgment against all three plaintiffs in the above-captioned matter. Defendant is entitled to summary judgment because plaintiffs fail to create any genuine issues of material fact.

# ARGUMENT

In their Memorandum in Opposition ("Plaintiffs' Memo.") plaintiffs attempt to create fact issues on their claims of a hostile work environment by using the second deposition testimony of Pat Connolly. As set forth previously, Connolly is an extremely hostile witness to defendant. See Defendant's Memorandum in Support of Motion for Summary Judgment ("Def. Memo."), pp. 4-5; Exhibit 3, pp. 11, 20.[1] Moreover, Connolly's second deposition testimony directly contradicts the testimony of the plaintiffs themselves, as well as, his own first deposition testimony.

This Circuit holds as a matter of law that a plaintiff cannot avoid summary judgment by proffering testimony from another person that contradicts the plaintiff's own testimony. Prosser v. Ross, 70 F.3d 1005 (8th Cir. 1995). In Prosser, the Eighth Circuit reversed the District Court for

---

[1] At his first deposition, Connolly appeared neutral; he did not show himself to be hostile toward defendant until his second deposition. Compare Exhibit 1 to Exhibit 3. (Unless otherwise noted, all exhibits, affidavits and declarations were submitted with defendant's original memorandum and were attached to the Affidavit of Ruth Y. Ostrom.) For the record, Ms. Ostrom was neither rude or misrepresented herself to Connolly. Exhibit 1, pp. 43; Supplemental Affidavit of Ruth Y. Ostrom.

the Western District of Missouri which denied appellant's motion for summary judgment. In reviewing the evidence presented to the district court, the Eighth Circuit held that the plaintiff had failed to raise a genuine issue of material fact by presenting witness testimony in his favor that directly contradicted his own testimony. Prosser, 70 F.3d at 1008.

The Prosser court reviewed the line of cases that hold that a party cannot avoid summary judgment by submitting testimony that contradicts his own earlier testimony. Id., citing Wilson v. Westinghouse Elec. Corp., 838 F.2d 286, 289 (8th Cir. 1988); Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1365-66 (8th Cir. 1983). See also Marathon Ashland Petroleum, LLC v. International Brotherhood of Teamsters, *et al.*, 300 F.3d 945 (8th Cir. 2002); American Airlines, Inc. v. KLM Royal Dutch Airlines, Inc., 114 F.3d 108 (8th Cir. 1997).

The Prosser court recognized that the previous line of cases all involved plaintiffs seeking to create a triable issue by submitting affidavits contradicting their own earlier testimony. The Prosser court reasoned:

> Surely, however, the principle of these cases will extend to one in which a plaintiff attempts to avoid summary judgment by proffering testimony from another person that contradicts the plaintiff's own testimony.

Prosser, at 1008.

The Prosser court found its holding that contradictory third party testimony failed to raise a material issue of fact was "strengthened by the fact that [the third party's] testimony was fraught with contradictions."[2] Id., (brackets added).

In American Airlines v. KLM,114 F.3d 108 (8th Cir. 1997), the Eighth Circuit affirmed the Honorable David S. Doty's decision granting defendant summary judgment, holding:

> Parties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment (citations omitted). […] While the district court must exercise extreme care not to take genuine issues of fact away from juries, a party should not be allowed to create issues of credibility by contradicting his own earlier testimony. Ambiguities and even conflicts in a deponent's testimony are generally matters for the jury to sort out, but a district court may

---

[2] Defendant asks that this Court keep this in mind, as well as the argument *supra*, when reviewing plaintiffs' attempt to rely on the deposition of Jeremy Bilder, who contradicted not only the plaintiffs' own testimony, but himself numerous times during his deposition. See Def. Memo., pp. 7 fn 6; Exhibit 7.

2

grant summary judgment where a party's sudden and unexplained revision of
testimony creates a fact issue where none existed before.

American Airlines v. KLM, 114 F.3d at 111.[3]

Thus, all cites to Connolly's deposition testimony which directly contradict the plaintiffs' own testimony can be properly disregarded.[4] The reliable admissible evidence left for the court to review is fully set forth in Defendant's Memorandum. Def. Memo. pp. 10-27.

**Plaintiffs' Arguments Fail as a Matter of Law.**

**Plaintiff cannot meet their respective burdens by aggregating their allegations.**

Plaintiffs' Memorandum lumps together its entire "laundry list" of complaints against Bogic without mentioning that not all events and statements occurred with all three plaintiffs. For instance, plaintiffs claim "Bogic repeatedly asked Plaintiffs if they wanted to see his "Serbian sausage," made gestures toward his genitals, commented on their bodies and the bodies of other women, talked about "fuckability" of customers, touched Plaintiffs, placed tips down their clothing, rubbed his body up against their, pinched their buttocks, and tried to give them massages." Plaintiffs' Memo. pp. 13,16.

Portner's deposition testimony, however, reveals that Bogic mentioned his "Serbian sausage" to her only once and merely told her that "girls wanted him" on a couple of occasions. Portner makes no allegations that Bogic talked about "fuckability," placed tips down her clothing, pinched her or tried to give her a massage. Exhibit 6, pp. 35, 36-37, 41. Plaintiff Crowley testified that the only comments Bogic said to her were about his "Serbian sausage" and "Right here baby". Exhibit 4, p. 28. By looking at each individual plaintiff's evidence, it is clear that, at best, they are complaining of "simple teasing, offhand comments, and isolated incidents" that do "not amount to discriminatory changes in the terms and conditions of employment." Nelson v. Wahpeton Public

---

[3] American Airlines rejected a party's attempt to raise a fact issue by submitting the party's own contradictory testimony. American Airlines, 114 F.3d at 111. This Court, like the court in Prosser, may extend this principle to a third party witness' contradictory testimony.

[4] For instance, page 3 of plaintiffs' Memorandum sets forth Connolly's "version" of the facts of Portner's last day of employment. Connolly's "version" directly contradicts Portner's own testimony, as well as Millie's and his own first non-hostile deposition testimony. Plaintiffs' Memo., p. 3; Def. Memo., pp. 13-17.

3

School District, *et al*., 310 F.Supp.2d 1051, 1058 ( Dist. N.D. 2004) (citing Faragher v. City of Boca Raton, 534 U.S. 775, at 788, 118 S.Ct. 2275, at 2283, 141 L.Ed. 2d 662 at 672 (1998) (citations omitted).

**Plaintiffs cannot prove that any "harassment" was based on sex.**

As plaintiffs acknowledge, they must prove, as part of their *prima facie* case, that Bogic's actions were based on their gender. Plaintiffs' Memo., p. 14. Plaintiffs' contention that they easily satisfy this element because each was subjected to unwanted sexual conduct because they were women, should not, however, be so easily accepted. Insults or demeaning remarks do not become a Title VII action merely because the plaintiff is a member of a protected class. Nelson v. Wahpeton Pub. Sch. District, 310 F.Supp.2d at 1058. Courts often look to whether the alleged harasser's actions were directed solely towards women in determining whether the harassment was based on sex. See Stacks v. Southwestern Bell Yellow Pages, Inc., 27 F.3d 1316, at 1326 (8th Cir. 1994). In this case, however, all of defendant's employees, except for Bogic and Connolly, were women. Affidavit of Milosava Ljubisavljevic. Moreover, none of the stylists who worked with Bogic and/or the plaintiffs corroborate plaintiffs' allegations. See Declarations of Heidi Ayinde, Sara Johnson, Xiong Vue, Van Pham, and Janine Wilson.

**Any alleged harassment was not severe enough to rise to the level of sexual harassment.**

As was extensively briefed in Defendant's Memorandum in Support, this Circuit, as well as the Supreme Court, have set a very high standard for finding that a work environment is sufficiently severe to create a hostile environment. See Def. Memo., pp. 30-37. In the 1998 case of Faragher v. Boca Raton, the Supreme Court made it clear that the complained of conduct must be extreme and cautioned against turning Title VII into a "general civility code." Faragher v. Boca Raton, 524 U.S. at 788; Def. Memo. p. 31. All of plaintiffs' cases cited in support of their argument that the atmosphere at the salon was severe enough to create a hostile environment pre-date Faragher, and therefore, can offer the court little guidance. See Plaintiffs' Memo., pp. 15-16.

4

**Plaintiffs cannot show retaliation or pretext.**

Portner did not suffer an adverse employment action. The uncontroverted evidence is that Portner quit.[5] A plaintiff cannot submit a resignation and then claim that the employer's acceptance of that resignation is an adverse employment action. Curby v. Solutia, Inc., 351 F.3d 868 (8th Cir. 2003). Portner quit after Bogic commented that she was fat, had ugly toes, allegedly implied she was not good looking, and after the two of them bumped into each other as Bogic was trying to get through a doorway. These are not circumstances under which a reasonable person would quit employment. See Howard v. Burns Bros., Inc., 149 F.3d 835, 841 (8th Cir. 1998) (constructive discharge arises only when a reasonable person would find the conditions of employment intolerable.); West v. Marion Merrell Dow, Inc., 54 F.3d 493 (8th Cir. 1995) (an employee may not be unreasonably sensitive to her work environment.) Lastly, Porter's refusal to discuss the situation with Millie and to receive or return her phone calls precludes a finding of constructive discharge. Exhibit 6, pp. 116-117; see Howard v. Burns Bros., 149 F.3d at 842 and West v. Marion Merrell Dow, 54 F.3d at 498 (an employee who quits without giving her employer a reasonable chance to work out a problem has not been constructively discharged).

Plaintiff Crowley claims that defendant retaliated against her by reducing her hours and wages and taking back vacation pay. Crowley does nothing to refute the undisputed evidence that she was the highest paid employee at the salon, defendant reduced her hours and pay to reduce payroll costs, that another highly paid employee also had her wages reduced, and that pursuant to Great Clips policy, as a part-time employee, she was not entitled to vacation pay. See Def. Memo., p. 20. In fact, Crowley admitted that at the time of her pay and hour reduction there "seemed to be a lot of people working less hours." Exhibit 1, p. 33. Moreover, defendant submitted the declaration of Priscilla Fursa, Crowley's previous manager, to contradict Crowley's testimony that

---

[5] For the first time, Portner now claims she may have been terminated, not constructively discharged. Plaintiffs' Memo., pp. 18-19. Defendant adamantly protests Portner's last minute attempt to change the theory of her case. Portner's complaint and deposition all allege constructive discharge. Parties cannot revise their own prior testimony in order to create an unresolved question of fact where none existed before. Geffre v. Metropolitan Council, 174 F.Supp.2d 962 (Minn. 2001); American Airlines, 114 F.3d at 111 and *supra*, p. 2.

her previous manager allowed her to take vacation time. Declaration of Priscilla Fursa. Plaintiff has failed to come forward with sufficient evidence of pretext.

Gronvall also claims her termination was retaliatory. Yet, again, all the admissible evidence supports defendant's non-discriminatory reason for terminating her, *i.e.* Gronvall's other job as an apartment caretaker limited her availability and her tendency not to show up made her unreliable. Her opinion that there was never a problem until after she complained "rests on her own definition of good performance, not the company's. This cannot create a fact issue on pretext." Sundberg v. High-Tech Industries, Inc., 2005 U.S. Dist. LEXIS 1139. Reply Exhibit 1.[6]

**Defendant was not aware of any harassment**

It is undisputed that none of the three plaintiffs ever went directly to Millie about their complaints of sexual harassment. They claim only of going to Connolly. Connolly states he considered Bogic's behavior merely innuendo. Millie adamantly denies that Connolly spoke to her about any complaints. Defendant's sexual harassment policy at the time specifically states that if an employee believes that she is not receiving equitable treatment concerning any employment policy, including the sexual harassment policy, she should contact their manager or owner. Reply Exhibit 2. Plaintiffs' admitted failure to speak directly to Millie, the owner, especially after receiving no results from Connolly, and failure to follow defendant's complaint policy precludes a finding that defendant knew of the sexual harassment. See Faragher, at 800, 804, 807-808.

Dated: February 11, 2005  GREENMAN & OSTROM

s/*Ruth Y. Ostrom*
Ruth Y. Ostrom, #245641
Mark A. Greenman, #228990
270 Grain Exchange North
301 Fourth Avenue South
Minneapolis, MN 55415
tel.: 612/677-8300

---

[6] Reply exhibits are attached to the Supplemental Affidavit of Ruth Y. Ostrom.