UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ANDERSEN CORPORATION,

    Plaintiff,

v.

FIBER COMPOSITES, LLC.,

    Defendant.

CIV NO. 00-CV-2548 (JNE/JGL)

# FIBER COMPOSITES' MEMORANDUM IN SUPPORT OF ITS MOTION IN LIMINE TO PRECLUDE ANDERSEN FROM ASSERTING INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

The defendant, Fiber Composites, hereby moves in limine to preclude the plaintiff, Andersen, from asserting infringement under the doctrine of equivalents at trial. As a matter of law, Andersen has failed to disclose an adequate basis to support such an infringement contention during discovery and in its expert report on infringement, and it should not be allowed to supplement this inadequate disclosure at trial.

### I. The Legal Standard for Proving Infringement Under the Doctrine of Equivalents

It is well established that proof of infringement under the doctrine of equivalents requires that the patentee show that each claim limitation or its substantial equivalent is found in the accused product, *Pennwalt Corp. v. Durand-Wayland, Inc.,* 833 F.2d 931 (Fed. Cir. 1989) (*en banc*) *cert. denied,* 485 U.S. 961 (1988). But, for those claim limitations where equivalence must be shown, the evidence needed to prove infringement is very specific and quite different from that needed to prove that the limitation is literally met. The Federal Circuit has repeatedly addressed this issue over a span of twenty years and almost always in the context of the patentee's failure to produce the proper evidence of equivalence at trial.

The first such case is *Nestier Corp. v. Menasha Corp-Lewis Systems Division,* 739 F.2d 1576 (Fed. Cir. 1984), where the lower court's ruling excluding the doctrine of equivalents was affirmed. There, the Federal Circuit said (at 1579):

> "[Nestier] also introduced documentary evidence to indicate that Menasha intended to produce boxes which were compatible with Nestier's boxes. However, this evidence was presented as part of [Nestier's] claims of literal, willful infringement. At no time did Nestier's attorneys or witnesses present evidence which was explicitly related to the jury in the *Graver Tank* terms of equivalence of functions, means, and result. Analysis of equivalence involves those three factors, and a jury cannot be expected to be able to make any such determination absent evidence and argument concerning the doctrine and each of its elements.
>
> \* \* \*
>
> Moreover, ***the theory of infringement through equivalence is not inherent, or necessarily included, in literal infringement theory when that alone is presented to a jury,*** although the circumstances and requirements might possibly differ in a non-jury trial."
>
> (Emphasis added)

Thus, the Federal Circuit made it quite clear that for a jury trial, the patentee's case for literal infringement did not satisfy the requirements for proving infringement under the doctrine of equivalents. Different proof was required for infringement under the doctrine of equivalents.

In *Lear Siegler, Inc. v. Sealy Mattress Co. of Michigan, Inc.,* 873 F.2d 1422 (Fed. Cir. 1989), the Federal Circuit explained the nature of this different proof above and beyond what is needed for literal infringement. There, the Federal Circuit reversed a finding of infringement under the doctrine of equivalents because the patentee had not provided what the Federal Circuit now characterized as "particularized testimony and linking argument" on the equivalence issue (at 1425-7):

> "[W]hile infringement under the doctrine requires 'only' substantial identity, substantial identity must be proven with regard to all three elements of the doctrine specified in *Graver Tank: function* performed, *means* by which function is performed, and *result* achieved. *Universal Gym Equipment, Inc. v. ERWA Exercise Equipment Ltd.,* 827 F.2d 1542, 1548, 4 USPQ2d 1035, 1039 (Fed.Cir.1987).
>
> In order to assure such separate analysis, we said in *Nestier,* as Sealy's counsel argued before the trial court, a jury must be separately directed to the proof of each *Graver Tank* element. *Nestier,* 739 F.2d at 1579, 222 USPQ at 749. The party asserting infringement must present '*evidence* and *argument* concerning the doctrine and *each* of its *elements.*' *Id.* (emphasis added). *The evidence and argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's*

> *case of literal infringement. Id.* Accordingly, the fact there was evidence and argument on literal infringement, that may also bear on equivalence, does not satisfy *Nestier*. *Id.*
>
> Absent the proper *Graver Tank* context, i.e., a showing of how plaintiff compares the function, means, and result of its claimed invention with those of the accused device, a jury is more or less put to sea without guiding charts when called upon to determine infringement under the doctrine. While we do not doubt the ability of a jury to decide the factual issue of equivalence, to enable the jury to use its ability, ***Nestier requires that the three Graver Tank elements must be presented in the form of particularized testimony and linking argument.***
>
> *   *   *
>
> *Nestier* requires explicit exposition of all three *Graver Tank* elements. **General references to the doctrine do not comport with this requirement.** Interpreting the import of Graver Tank, the Nestier court said 'a jury cannot be expected to be able to make any such determination absent evidence and argument concerning the doctrine and *each of its elements.*' *Nestier,* 739 F.2d at 1579, 222 USPQ at 749 (emphasis added)."
>
> (Emphasis in italics in original; emphasis in bold added)

In other words, proof of infringement under the doctrine of equivalents required "particularized" testimony as to each of the three *Graver Tank* factors.

In 1987, the Federal Circuit held that infringement under the doctrine of equivalents must be proven on an element-by-element basis, *Pennwalt Corp. v. Durand-Wayland, Inc.,* supra, but this changed nothing as to the requirement of the additional particularized testimony relating to the proof required for infringement under the doctrine. In fact, after *Pennwalt,* the Federal Circuit further explained the nature of the particularized testimony that was required and once again took issue with the type of generalized conclusory testimony of equivalents on which the patentees so often (and unsuccessfully) attempted to rely. In *Malta v. Schulmerich Carillons, Inc.,* 952 F.2d 1320 (Fed. Cir. 1991), the Federal Circuit affirmed the lower court's setting aside a verdict of infringement under the doctrine of equivalents for lack of proper evidence, saying (at 1327):

> "This court in *Lear Siegler,* following *Nestier,* held that a patentee must prove substantial identity as to each of the function, way, and result prongs of the doctrine of equivalents. *Lear Siegler,* 873 F.2d at 1425, 10 USPQ2d at 1770, *Nestier,* 739 F.2d at 1579-80, 222 USPQ at 750. As the court noted in *Lear*

> *Siegler,* such proof is necessary to prevent the jury from being 'put to sea without guiding charts,' and from determining infringement by simply comparing the claimed invention and the accused device 'as to overall similarity.' *Lear Siegler,* 873 F.2d at 1426-27, 10 USPQ2d at 1770-71.
>
> With this requirement in mind, we agree with the district court that the evidence was insufficient to support a finding of infringement under the doctrine of equivalents. Malta's brief to this court discusses the above testimony at great length, explaining how this testimony informs the jury of the function, way, and result achieved by the accused device. ***However, what is clearly lacking in that testimony is a sufficient explanation of both why the overall function, way, and result of the accused device are substantially the same as those of the claimed device and why the plastic/slotted plastic/felt arrangement is the equivalent of the claimed buttons limitation. Mr. Malta's offhand and conclusory statements ('buttons or the equivalent thereof' and 'They function like buttons') are not sufficiently particularized evidence.*** In short, with little guidance, the jury was left to its own imagination on the technical issue of equivalency."
>
> (Emphasis added)

Thus, the particularized testimony requires an explanation of *why* there is equivalence, and once again, generalized statements are not enough.

In 1995, the Federal Circuit held that a finding of infringement under the doctrine of equivalents required proof of insubstantial differences between the claimed invention and the accused products, and that the function-way-result test of *Graver Tank* was not necessarily the only evidence on the subject, *Hilton-Davis Chemical Co. v. Warner-Jenkinson Co. Inc.,* 62 F.3d 1512 (Fed. Cir. 1995) (*en banc*), reversed on other grounds, 117 S.Ct. 1040 (1997). More specifically, the Federal Circuit in *Hilton-Davis* held (at 1518-19):

> "With this case, this court explicitly holds that the application of the doctrine of equivalents rests on the substantiality of the differences between the claimed and accused products or processes, ***assessed according to an objective standard.***
>
> * * *
>
> In either event, the vantage point of one of ordinary skill in the relevant art provides the perspective for assessing the substantiality of the differences. *Valmont,* 983 F.2d at 1043. ***The test is objective, with proof of the substantiality of the differences resting on objective evidence rather than unexplained subjective conclusions, whether offered by an expert witness or otherwise.***"[1]

---

[1] The Supreme Court granted cert. and ultimately reversed and remanded. The Supreme Court disagreed with the Federal Circuit's conclusion that copying was part of the evidence relating to

(Emphasis added)

This objective standard fit in perfectly with the Federal Circuit's requirement that particularized testimony, above and beyond that needed to prove literal infringement, is required to prove infringement under the doctrine of equivalents. Indeed, in *Texas Instruments, Incorporated v. Cypress Semiconductor Corporation*, 90 F.3d 1558 (Fed. Cir. 1996), the Federal Circuit referenced *Hilton-Davis* in affirming a lower court's ruling that insufficient evidence had been presented to support a finding of infringement under the doctrine of equivalents (at 1566):

> "In *Hilton Davis,* we held that 'the application of the doctrine of equivalents rests on the substantiality of the differences between the claimed and accused products or processes, assessed according to an objective standard.' *Hilton Davis,* 62 F.3d at 1518, 35 USPQ2d at 1645. In doing so, we recognized that the function, way, result test applied in *Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co.,* 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950) often sufficed to show the substantiality of the differences. *Id.* However, we further acknowledged that the function, way, result test was not 'the' sole test for equivalency. *Id.* Instead, we stated that other '*objective* evidence rather than unexplained subjective conclusions' may be relevant to the determination whether the differences between the accused product or process and the claimed invention are insubstantial. *Id.* at 1519, 35 USPQ2d at 1646 (emphasis added). Such evidence may include evidence of known interchangeability to one of ordinary skill in the art, copying, and designing around. Thus, we recognized that the doctrine of equivalents was 'not the prisoner of a formula' and 'the available relevant evidence may vary from case to case.' *Id.* at 1518, 35 USPQ2d at 1645."

(Emphasis added)

The Court then went on (1566-7):

> "However, we further stated that '[the *Hilton Davis*] case presents an opportunity to restate – not to revise – the test for infringement under the doctrine of equivalents.' *Id.* at 1516, 35 USPQ2d at 1644. Consequently, we did not, as the defendants contend, overrule our prior decisions that addressed the specific evidentiary requirements necessary to prove infringement under the doctrine of equivalents. In particular, we did not eliminate the need to prove equivalency on a limitation-by-limitation basis. *See Pennwalt Corp. v. Durand-Wayland, Inc.,* 833 F.2d 931, 935, 4 USPQ2d 1737, 1739-40 (Fed. Cir. 1987) (in banc), *cert. denied,* 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988); *see also Athletic Alternatives, Inc. v. Prince Mfg., Inc.,* 73 F.3d 1573, 1582, 37 USPQ2d 1365,

---

the doctrine of equivalents and that any amendment necessarily invoked an estoppel. The Supreme Court, however, did not disagree with the "objective" standard for proving equivalence, as held by the Federal Circuit below.

1373 (Fed.Cir.1996) (applying the *Pennwalt* rule after our in banc decision in *Hilton Davis*). **Nor did we overrule precedent requiring equivalency to be proven with 'particularized testimony and linking argument.'** See *Lear Siegler, Inc. v. Sealy Mattress Co.,* 873 F.2d 142, 10 USPQ2d 1767 (Fed.Cir.1989); *Malta v. Schulmerich Carillons, Inc.,* 952 F.2d 1320, 21 USPQ2d 1161 (Fed.Cir.1991), *cert. denied,* 504 U.S. 974, 112 S.Ct. 2942, 119 L.Ed.2d 566 (1992).

* * *

Hence, the district court properly determined that our decision in *Hilton Davis* did not overrule *Lear Siegler*. **Pursuant to our precedent, a patentee must still provide particularized testimony and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process, or with respect to the function, way, result test when such evidence is presented to support a finding of infringement under the doctrine of equivalents. Such evidence must be presented on a limitation-by-limitation basis. Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice.**"
(Emphasis added)

Once again, generalized testimony is not enough. Even further, in order to meet the "insubstantiality of differences" standard, the patentee must present *objective* particularized evidence and testimony, on a limitation-by-limitation basis, in order to meet the threshold requirement for even getting the issue to a jury.

While no specific formula is required for this objective linking evidence, *see National Presto Industries, Inc. v. West Bend Co.,* 76 F.3d 1185, 1191 (Fed. Cir. 1996), it still must exist, *Hewlett-Packard Co. v. Mustek Systems, Inc.,* 340 F.3d 1314, 1322-3 (Fed. Cir. 2003): (reversing the district court's granting of JMOL as to infringement under the doctrine of equivalents).

## II. Mr. Liukkonen's Expert Report Does Not Contain the Necessary Particularized Testimony and Linking Argument

Andersen submitted just one expert report on the infringement question, and that was the report of Robert Liukkonen. It is 73 pages in length. The first 15 pages deal with background. The next 56 pages deal with Mr. Liukkonen's conclusion that all the asserted claims of all six patents originally in suit are literally infringed. Less than two pages at the very end deal with infringement under the doctrine of equivalents. They are attached hereto as Exhibit A.

First, directly contrary to the requirements of *Nestier* and *Lear Siegler,* it is absolutely clear that Mr. Liukkonen's evidence and testimony for literal infringement is *exactly the same* as that for his abbreviated doctrine of equivalents "analysis." In fact, that is precisely how he starts the part of his report dealing with the doctrine of equivalents (Exhibit A at p. 71):

> "In my opinion, the FIBERON rail products literally infringe each of the Claims above for the reasons stated above under each individual claim. Those railings products therefore would also infringe under the doctrine of equivalents."

This Court, however, disagreed with Mr. Liukkonen's conclusion as to literal infringement of all the asserted claims. On summary judgment, the Court found no infringement whatsoever as to the asserted claims of four of the patents-in-suit (the Group I composition patents) and no literal infringement after January 1, 2001 of the claims of the two remaining patents, U.S. Patent No. 5,486,553 ("the '553 patent") and U.S. Patent No. 5,539,027 ("the '027 patent") (Docket Entry No. 215). The reason there was no literal infringement of the claims of the latter two patents after January 1, 2001, was that Fiber Composites changed the formulas used to make its railing parts, so that all its formulas after January 1, 2001 contained less than 30% wood fiber. Indeed, some of Fiber Composites' railing parts after that time had percentages of wood fiber as low as 10%. On the other hand, the '553 patent claims call for wood fiber percentages of "about 35-55%" by weight while the '027 patent claims call for a range of "30-50%" by weight of wood fiber. Thus, as to this one claim limitation, the question of infringement under the doctrine of equivalents becomes the question of the *objective evidence* that shows that one skilled in the art would view the various wood fiber percentages below 25%

in Fiber Composites' products as being insubstantiality different from the wood fiber percentage of the claims, which start at 30% and go higher.

No such objective evidence can be found in Mr. Liukkonen's report. Instead, in the two page portion of his report supposedly dealing with the doctrine of equivalents, he only states that if *Fiber Composites* identifies any differences in any of the numerous limitations, he would respond that there is nevertheless *literal* infringement because of the "flexible" language of the claims (Exhibit A, p. 72):

> "To the extent that Fiber Composites would contend that any claim element is not met because some numeric claim element is not present within the exact numeric range or number stated, as I pointed out above, most of these claims use flexible language such as 'about' or 'at least' with respect to those numeric elements, e.g., 'about 35 to 55 wt-%,' 'at least about 2,' 'about 30 to 50 wt-%,' greater than about 1.8,' 'minimum width of about,' 'less than about.' It is this flexible language, as well as the test results (and all other information discussed above), ***in my opinion that supports the conclusion that these claim elements are literally infringed even if the exact number stated for a range of dimension is not present.***"

As to the doctrine of equivalents, Mr. Liukkonen then goes on to make exactly the same "argument" based on exactly the same "evidence" (Exhibit A, p. 72):

> "However, in my opinion, one of ordinary skill in the art, reading the patents in their entirety with respect to the ranges, percentages, or dimensions, would recognize the teachings and disclosures are broad, e.g., that 'various proportions' of wood fiber can be used, the disclosure that fiber sizes are 'commonly' based on a 'random selection of about 100 fibers,' and similar language. ***Thus, one of skill in the art would recognize that quantities and dimensions outside the specific ranges or dimensions states could be used in amounts or dimensions that are insubstantially different than those stated, or in substantially the same way, with substantially the same function, to achieve substantially the same results, namely a superior replacement for a wooden structural member.*** This is my opinion with respect to claims that use the language mentioned, as well as the claim that uses a range, '30 to 50 wt-%' without 'about'."

Thus, Mr. Liukkonen's doctrine of equivalents argument collapses into his literal infringement argument, which is exactly what the Federal Circuit has repeatedly said is improper and insufficient to support a finding of infringement under the doctrine of equivalents, *Lear Siegler,* 873 F.2d at 1426.

While the Court in its summary judgment order credited Mr. Liukkonen with specifically articulating that the difference between wood-fiber content in the accused products and the asserted claim limitations was insubstantial, Mr. Liukkonen never did so. Instead, as quoted above, he treats *all* of the limitations of *all* of the asserted claims and *all* of the accused products en mass. Importantly, he did not state which accused product has a wood-fiber content that is insubstantially different from the claims, or *why* the difference is insubstantial, as expressly required by the Federal Circuit, *see Malta,* supra. Instead, all he makes is a conclusory statement that if all products that are outside of the claimed ranges by any amount, they are nevertheless superior replacements for wooden structural members and thus are equivalent under the doctrine of equivalents. Such generalized testimony is plainly insufficient as a matter of law, *see Texas Instrument,* supra.

As noted in *Hilton-Davis,* equivalence may still also be established by application of the "function, way, result" test. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 39, 137 L. Ed. 2d 146, 117 S. Ct. 1040 (1997), and while Mr. Liukkonen purported to invoke this test, he never really applied it (Exhibit A, pp. 72-73):

> "Again, it is undisputed that Fiber Composites is using wood fiber and polymer ***in substantially the same way, namely in ranges and dimensions that are the same as, similar to, or within acceptable extensions of those ranges and dimensions, and then mixing and extruding the material into railing parts.*** Further, it is apparent that Fiber Composites is using the composite material of blended PVC and wood fiber to achieve substantially the same results. For example, Doug Mancosh admitted that using wood fiber will improve physical properties, including stiffness. Mancosh Depo. at 172-73, 177. He also recognized that PVC and wood fiber is a strong material than pure PVC, and the ability to add stiffness is an important feature. Mancosh Depo. at 172, 177. And, based on Aspen's test

results, Fiber Composites has achieved a superior railing product that is a replacement or alternative to a wood railing product, as well as a product that has a high strength properties and low coefficient of thermal expansion."[2]

At best, his generalized testimony here is still of exactly the same type repeatedly rejected by the Federal Circuit, *see Malta,* supra, and *Lear Siegler,* supra. Further, he neglected to show *any* evidence that there was any equivalence with respect to the "function" prong – and certainly never discussed this prong *vis a vis* the wood-fiber content limitations. The Federal Circuit has previously held that this alone defeats an equivalence argument, *Hewlett-Packard,* 340 F.3d at 1323 ("The testimony cited by Hewlett does not even address the issue of equivalence of function. In short, Hewlett failed to introduce evidence to support a verdict in its favor under the doctrine of equivalents."). Mr. Liukkonen's treatment of the "way" prong of the test for equivalence is also deficient. His report simply states:

> "[I]t is undisputed that Fiber Composites is using wood fiber in substantially the same way, namely in ranges and dimensions that are the same as, similar to, or within acceptable extensions of those ranges and dimensions, and then mixing and extruding the material into railing parts."

He provides no support for the statement that this contention is undisputed, nor is there any proof that the "way" is as he concludes, or that the accused devices work in that "way." Once again, this is precisely the type of conclusory argument that the Federal Circuit has said is insufficient to prove infringement under the doctrine of equivalents, *see Malta,* supra.

For the foregoing reasons, Mr. Liukkonen's report, which Andersen's sole opinion on infringement, is not sufficient to prove infringement under the doctrine of equivalents. If this testimony was given to the jury, the law is clear that it would be grounds for a directed verdict of non-infringement on behalf of Fiber Composites' because it is legally insufficient based on

---

[2] It is interesting that the claims call for a specific measurement of the amount of stiffness (Young's Modulus value), and the undisputed testimony is that the value increases with the amount of wood fiber. It is also noteworthy that the tests referred to by Mr. Liukkonen only involve Fiber Composites' products made with pre-January 1, 2001 formulas with the wood content well above 30%.

twenty years of Federal Circuit precedent. Thus, it should not be allowed to be presented to the jury at all.

### III. Mr. Liukkonen's Report Cannot Be Supplemented Now

Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure requires that the report of a testifying expert contain a complete statement of *all* opinions and the bases and reasons therefore. Mr. Liukkonen purports to submit exactly such a report, and his deposition was taken on it. As Andersen's focus on this case has always been literal infringement, Mr. Liukkonen's report focuses on that and it is legally deficient on the issue of the doctrine of equivalents, for the reasons as explained above. As a result, neither Andersen nor Mr. Liukkonen should be allowed to "supplement" the report now, either in writing or in testimony at trial. Consequently, Andersen has failed to make out a case of infringement under the doctrine of equivalents, as a matter of law.

### CONCLUSION

Andersen should be precluded from asserting at trial infringement under the doctrine of equivalents from citing of the claims of the '553 patent and the '027 patent.

Dated: March 18, 2005                    FISH & RICHARDSON P.C., P.A.


By: s/ Katherine A. Moerke
    Jonathan E. Singer (#283459)
    Katherine A. Moerke (#312277)
    3300 Dain Rauscher Plaza
    60 South Sixth Street
    Minneapolis, MN 55402
    Telephone: (612) 335-5070

    John M. Skenyon
    Michael E. Zeliger
    Fish & Richardson P.C.
    225 Franklin Street
    Boston, MA 02110-2804
    Tel.: (617) 542-5070
    Fax: (617) 542-8906

Attorneys for Defendant
FIBER COMPOSITES, LLC.

21046874.doc