ervisor Wessberg, I was forced to walk all the way back across the compound once
and I was finally ( 'ned by P.A. Espinal. I t( Espinal that I took my
escribed Imitrex nasal sp..y and was out of both the ..trex and the prescribed
Aspirin. I was asked how much pain I was in by Espinal on a scale of 1 to 10, and I
explained that my pain was at a level 8 which was excruciating like a continuous kick in
the privates. I asked Espinal if he and the Duluth F.P.C. Medical Department was going
to honor my request for stronger pain medication like previously prescribed by other
private and B.O.P. professionals, but Espinal said that it was up to Dr. Barton and that
Dr. Barton was in training and wouldn't be able to see me until next week. (I haven't
seen the doctor in six weeks since my arrival here on 1-22-03 and Dr. Barton has not
responded to any of my written inmate medical requests.)

Before leaving the medical department building, I asked Espinal if he was going to grant
me a lay-in pass for the day which has always been honored, routine, and logical in every
single prison, private or emergency medical facility in my entire life throughout the
entire nation when confronted with one of my serious chronic migraine attacks. P.A.
Espinal incorrectly refused to grant me a lay-in pass so I could sleep off the migraine
and recouperate through much needed rest at this time. I was incorrectly forced back to
work under dangerous conditions that are extremely unhealthy and toxic to my chronic
medical conditions. I believe the periodic unhealthy carbon monoxide and other garbage
fumes at my newly assigned work position were partially responsible for setting off this
2nd migraine attack in a period of 4 days (I was recently reassigned to the recycling and
garbage facility without any prior knowledge or my personal input. Case Manager Witte
reassigned me because I was never correctly cleared through medical in my first assigned
servitude position in food service. I should have never been assigned to food service in
the first place because I have chronic Hepatitis C liver disease which is well documented
in my medical file. Also note that 4 days prior to this migraine attack, I was correctly
given a one day lay-in pass by P.A. Polzin for the similar migraine attack on 2-24-03.
Why did P.A. Espinal incorrectly discriminate against me on this second attack? I feel
as though some type of sadistic retaliation is already being incorrectly used against me
at this institution which seems to be quite common in my past 6 year prison experience
when I've had to file complaints).

Further, as I was walking out of the medical department on the way back to my newly
assigned work position under great stress, anxiety, and suffering, I saw Supervisor
Wessburg at his vehicle and told him that Espinal was incorrectly forcing me back to work
against my will because he refused to grant me a lay-in pass and that I was very ill and
needed rest (After one of my classic chronic migraine attacks, I have intense pain,
suffering, and nausea for a period of 1 day up until a week on some occasions that
require immediate medical attention and a strong pain shot or pills with immediate bed
rest. Well documented Demerol injections were always normally prescribed by private and
emergency room doctors prior to my incarceration, and Tylenol-Codeine were prescribed by
prison neurologists and medical doctors in the past. Proper treatment and pain
medication have not been properly provided to me by Waseca F.C.I. or Duluth F.P.C. for
approximately 4 years now through a dozen excruciating migraine episodes).

I told Supervisor Wessburg that I needed to speak with the Health Service Administrator,
R. DeFrance, because I disagreed with Espinal's decision and I had a right to seek
another opinion and ask for an override. Otherwise, I told him that I wanted to speak
with the Captain about this insane decision to send me back to work. I told Wessburg
that I was too sick to work right now and that I needed to rest. Wessburg then
approached R. DeFrance in his office and spoke with him behind closed doors for several
minutes. I also saw P.A. Espinal and he asked me what I was still doing in the medical
department. I told him that Wessberg was speaking with DeFrance about the fact that he
was forcing me back to work when I was ill and in need of treatment and rest. Then I saw
Espinal go into Defrance's office and exit a few minutes later.

I was then called into DeFrance's office in front of DeFrance and Wessberg, and I was
told by DeFrance that Espinal had made a clinical decision to send me back to work and
that he would not override Espinal's decision. DeFrance also asked me what my pain level
was and I told him about a level 8 and excruciating like a continuous kick in the balls.

over...

Then Wessberg told me that ( nad no choice but to honor th( prisons policy and that I had a free choice to report back to work or not. The truth is that I had no choice except to report back to work extremely ill against my will, or to be subjected to a write up and locked down in solitary confinement for 24 hours a day in a maximum security prison cell for refusing to report back to work. Wessberg also stated that thousands of prisoners over the past 20 years have also had to follow this well established policy here at this prison and other U.S. prisons for many, many years before those 20. I told them that their policy here was subject to challenge in a United States Courthouse and through Bureau procedure. I also told them that their policy was cruel. I also told them that I wanted to speak with Dr. Barton and they said he was in training and not available.

I was then forced to return and work under Mr. Wessberg which was against my will. After DeFrance refilled my prescription for Aspirin and Imitrex, I told DeFrance that I was returning to my assigned work position under protest and that my Constitutional Rights were being violated. I also told him that their tactics and Policy were cruel and unusual under the 8th Amendment and that Espinal, DeFrance and the F.P.C. Duluth Medical Department were responsible for my health and well being. I also told Wessberg that I was only back to work under protest and that I feel as if my Constitutional Rights were being violated. I was then given specific work projects for approximately 8:30 AM until 3:25 PM that day. I vomited throughout the morning because of the pain and nausea associated with my chronic condition.

In conclusion, this uncalled for incident was completely avoidable from the very start and throughout by Espinal, DeFrance, and Wessberg. These prison officials were deliberately indifferent to my serious medical needs and incorrectly forced me to work beyond my physical and mental capacity while I was seriously ill. Temporary blindness and excruciating pain and nausea put my life, safety and well-being into serious jeopardy. These last 2 migraine attacks and improper medical care have unnecessarily caused me great pain, suffering, anxiety, and depression. I ask that this formal complaint be well documented and officially entered into the record. I also ask that the complaint be formally investigated for ongoing medical neglect and abuse on this compound. I also ask that I be placed in a medically restricted job position that can meet my chronic medical needs in a safe and toxic free environment. This pitiful and neglectful situation needs to be corrected immediately and certain safeguards need to be properly put into place to insure that this type of avoidable incident never happens again. And finally, Espinal, DeFrance, and Wessberg and the F.P.C. Medical Department under Dr. Barton need to be sanctioned, repremanded and corrected for their cruel and unusual tactics and medical neglect which is in violation of the United States Constitution as shown in Weaver v. Clark, 45 F.3d 1253 (8th Cir. 1995). Prison officials violate 8th Amendment by being deliberately indifferent either to prisoner's existing serious medical needs or to conditions posing substantial risk of serious future harm.

Please respond in writing within 3 days as shown under the serious medical issue response time in Administrative Policy Statement 1330.13 and the A & O Handbook. Also make note that my medical issues are not the only ones at this prison camp. Many others have also been verbally abused and medically neglected at this camp. This is a minimum security prison camp, not a sadistic torture chamber or abusive hate factory.

Dated: _3-5-03_

Respectfully and truthfully submitted to the best of my knowledge under the penalty of perjury pursuant to Title 28 U.S.C. §1746 and Title 18 U.S.C. §16**21**.

*Donald James Monaco*
Donald James Monaco #13314-006
Unit #208
F.P.C. Duluth
Post Office Box 1000
Duluth, MN 55814

CC: DM/MF

Page 3

# THE DISABILITY REPORTING FORM

INMATE NAME: _Monaco, Donald_  REG #: _13314-006_

A disability refers to permanent mental or physical impairment or condition that substantially limits one or more major life activities.

| | | |
|---|---|---|
| **DEAF:** | total deafness in one or both ears. | |
| **HEARING LOSS:** (HEAR LOSS) | partial hearing loss, an inability to hear conversation under normal circumstances. | |
| **BLIND:** | total blindness | |
| **VISION IMPAIRMENT:** (VISION IMP) | Loss of peripheral (side) vision, or an inability to read normal size print even with ordinary corrective lenses. | |
| **MISSING LOWER EXTREMITY:** (MISS EXT L) | Complete or partial loss of lower extremity, one or both feet or legs. (Ordinarily this would not include loss of toes but may, if it affects mobility, the ability to walk or other major life activity. | |
| **MISSING UPPER EXTREMITY:** (MISS EXT U) | Complete or partial loss of upper extremity, on or both hands or arms. (Ordinarily this would not include loss of fingers but may, if it affects mobility, the ability to dress if it affects mobility, the ability to dress, eat or other major life activity.) | |
| **ORTHOPEDIC DISABILITY:** (ORTHO DISB) | Loss of ability to move or use parts of the body because of chronic pain, stiffness or weakness in bones or joints. | |
| **PARTIAL LOWER PARALYSIS:** (PARAL LOW) | Partial loss of ability to move or use the lower part of the body because of a brain, nerve or muscle problem, including palsy and cerebral palsy. | |
| **PARTIAL UPPER PARALYSIS:** (PARAL UPR) | Partial loss of ability to move or use the upper part of the body because of a brain, nerve or muscle problem, including palsy and cerebral palsy. | |
| **PARALYSIS:** | Total loss of ability to move or to use a part of the body because of a brain, nerve or muscle problem, including palsy or cerebral palsy. | |
| **TERMINAL:** | A terminally ill patient. | |
| **WHEELCHAIR:** | Patient requires a wheelchair due to permanent disability. | |
| **MENTALLY RETARDED:** (MEN RET) | A chronic and lifelong condition characterized by an IQ of 70 or below and concurrent deficits in adaptive functioning | |
| **LEARNING DISABLED:** (LD) | A disabling disorder in sensory, perceptual or cognitive processes which interfere with the ability to learn in a conventional manner. | |
| **MENTALLY ILL:** | Any emotional or mental condition that substantially impairs the ability to function. | |

SIGNATURE _____

DATE _1/22/03_

## SENTRY MEDICAL DUTY STATUS

| ASSIGN | DESCRIPTION |
|---|---|
| ALLRG/WOOL | ALLERGIC TO WOOL |
| ART LIMB | ARTIFICIAL LIMB |
| ATH RESTR | NO SPORTS/NO WEIGHTS |
| COLD/WIND | NO EXCESSIVE COLD/WIND |
| DRIV RESTR | GLASSES REQUIRED FOR DRIVING |
| HEAR RESTR ✓ | NO WORK IN HIGH NOISE AREAS |
| HGT RESTR | NO LADDERS/NO UPPER BUNKS |
| LIMIT SUN | NO EXCESSIVE SUN |
| LOWER BUNK | LOWER BUNK REQUIRED |
| MED HOUS | SPECIAL HOUSING/MED RESTR |
| NO DRIVING | NO DRIVING-MEDICAL CONDITION |
| NO DUTY 2/24/03 ✓ | NO DUTY DUE TO MED. CONDITION |
| NO F/S ✓ | NO FOOD SERVICE WORK |
| NO POLLUT | ASSIGN TO POLLUTION FREE AREA |
| NOT MED CL | NOT MEDICALLY CLEARED |
| ORTH SHOES | ORTHOPEDIC SHOES |
| OTHER | OTHER MEDICAL RESTRICTIONS |
| REG DUTY | NO MEDICAL RESTRICTIONS |
| REG DUTY W ✓ | REGULAR DUTY WITH MEDICAL RESTRICTIONS |
| SOFT SHOES ✓ | SOFT SHOES ONLY |
| SPEC DIET | SPECIAL DIET-MEDICAL CONDITION |
| STAND RSTR | NO PROLONGED STANDING |
| WGT 15 LB | NO LIFTING OVER 15 LBS. |
| WGT 20 LB | NO LIFTING OVER 20 LBS. |
| WGT 25 LB | NO LIFTING OVER 25 LBS. |
| YES F/S ✓ | CLEARED FOR FOOD SERVICE |

FEDERAL PRISON CAMP DULUTH, MN

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE                                    **FEDERAL BUREAU OF PRISONS**

| TO: (Name and Title of Staff Member)<br>*Dr. BARTON - Medical Doctor* | DATE: *2-25-03* |
| FROM: *DON MONACO* | REGISTER NO.: *13314 - 006* |
| WORK ASSIGNMENT: *Kitchen Day* | UNIT: *208* |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)
Dear Doctor Barton, I realize that your busy, underbugeted & shorthanded around here, but
after speaking with you in main line at approx. 11:35 a.m. on Friday 2-21-03, I became
concerned about your comment that you don't issue soft-shoe permits because they conflict
with assigned work requirements around here.  I also explained to you once again that
my pre-existing foot injury has been continuously & unnecessarily aggrivated by the newly
issued shoes that I have been forced to wear.  I also re-explained that I've had a soft
shoe permit for approx. 6 years in prison & that I have always worn soft tennis shoes since
my foot injury approx. 15 years back.  You & I both know that serious medical issues always
take priority over institutional policy such as assigned work positions.

       Once again, I respectfully request a soft shoe permit which is much needed in my
extremely uncomfortable & painful foot situation.  Contrary to your statement, I personally
know of several prisoners on this compound who have serious foot problems that have been
issued soft-shoe permits.  Why are you discriminating against me viewed in comparison to
these other prisoners who also have foot problems?  If you are worried about my assigned
work position placement in light of my request for a soft shoe requirement, then I suggest
that you place me on a medically restricted work position status or minimal utility position
that meets my medical needs.  The only other option I can see is for you to request a
qualified outside pediatrist to custom fit & order a pair of soft tennis shoes with light-
weight fiberglass toes that will comfortably fit my custom made orthodics that Dr. Gray

CC:DM/MF                    (Do not write below this line)          (see attached)

DISPOSITION:

*You ARE SCHEDULED TO SEE ME.
WATCH THE CALL-OUT FOR YOUR
APPOINTMENT AND WE CAN
REVIEW THESE ISSUES.*

| Signature Staff Member | Date<br>*3/4/03* |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94


Printed on Recycled Paper

...cifically ordered for me at F.C.I. Waseca. It's a fact that I wore custom made orthodics for many years prior to my incarceration. Dr. Gray also requested that my orthodics were to stay with me at all times. Your new low-cut shoe is not working with my prescribed orthodic. Your required work shoe hurts both of my feet with the prescribed orthodic, because I am forced to cram my feet into an opening that is to small for both. (Please see the attached Medical Restriction showing the custom made "Foot Heeler" orthodic inserts & special order tennis shoes approved through Waseca Health Service Director Allen Jorgenson on 7-11-02 & Paramedic Clinitian J. Zimmer on 4-15-02).

The above attached exhibits were also cleared by Dr. Mark Gray along with a soft shoe permit upon my arrival at Waseca F.C.I. in the approx. year of 2000. Soft shoe permit was also granted by the Terminal Island F.C.I. Medical Department back in 1998. Please see my medical records once again & grant the permit I am entitled to, otherwise I have no choice except to file further formal complaints, Administrative Remedies & possible lawsuits for injunctive relief.

Before closing, I would also like to know why you haven't given me a written response to my last cop-out dated 2-1-03 discussing my foot & soft shoe problem & other serious unresolved medical issues? One particular question is why wasn't I given a thorough medical screening within 14 days of my arrival at this institution which is clearly shown in the attached page of the Duluth A&O handbook? Another question I have is why was I medically cleared to work in the kitchen within 3 days of my arrival when I have well documented proof of chronic Hepatitis C blood disease? Supervisor Randa in food service personally told me on Friday 2-21-03, at approx. 5:45 p.m., that "NO ONE who has a blood born disease like Hepatitus C is allowed to work in food service." I also notified my unit team about this chronic medical issue & the kitchen at approx. 3:p.m. Team Meeting on 2-21-03.

My question is this: who's incorrect medical mistakes are these, and what would the Minnesota State & Federal Health Administrations & Medical Boards have to say about these unresolved & incorrect medical issues? Besides, what would my immediate family members & the general public have to say about these issues?

In conclusion, I'm sure that you will agree that its time for a mutual and professional understanding between you, myself, my medical records & my immediate unresolved medical issues. Anything less will surely lead to future problems down the road for both of us. I'm patiently waiting to meet & resolve these & other medical issues with you as soon as possible.

Thanks in advance for your time and professionalism, please respond in writing according to policy requirements and medical rules.

Dated: 2-25-03

Truthfully & respectfully submitted
under Title 28 U.S.C. § 1746 by:

Donald James Monaco

Donald James Monaco
13314-006, Unit-208
P.O. Box 1000, F.P.C.
Duluth, MN 55814

CC:DM/MF                              -2-

# MEDICAL RESTRICTIONS
## FCI WASECA, MN

INMATE: _Monaco, Donald_   UNIT: _B_

REG#: _13314-006_   DETAIL: _Yard 2_

---

PLEASE BE ADVISED THAT THE ABOVE INMATE HAS BEEN:

☒ Evaluated by medical staff: Date/Time _4-15-02_   _1500_

MEDICAL CLASSIFICATION STATUS:

☐ Idle: Reason_____ Until_____
DATE

  ☐ Restricted to Unit      ☐ Complete Bedrest

☐ Convalescence: Restrictions_____

_____ Until_____
DATE

☐ Restricted Duty: State type of restrictions_____

_____ Until_____
DATE

☒ Other: _1 pair "Foot Leveler" Shoe inserts_
_to stay w/inmate (@ all times)_

_J Zimmer EMP_
**CLINICIAN**
J. Zimmer
NREMT - Paramedic
FCI Waseca

DEFINITIONS AND INSTRUCTIONS

IDLE STATUS - Temporary disability not to exceed three days duration. Restricted to unit except for meals, religious services, sick call, and callouts. No recreation.

COMPLETE BEDREST - Restricted to BED except for meals, religious services, sick call, and callouts. No recreation.

CONVALESCENT STATUS - Recovery period for operation, injury, or serious illness. Full institutional and limited recreational privileges, subject only to medical limitation.

RESTRICTED DUTY - List restriction, limitation, and time period.

S. DEPARTMENT OF JUSTICE                                    FEDERAL BUREAU OF PRISONS

| ting Classification | Purchase Order No. | SPO Reference No. 540687 | Actual Amount Charged to Credit Card $ |
|---|---|---|---|

| Vendor's Name and Address | Institution's Name and Address | Fund control Number |
|---|---|---|
| EastbAy<br>P.O. Box 8066<br>WAUSAU, WI 54402-8066 | F.C.I. WASECA<br>1000 University Dr. SW<br>WASECA, MN 56093 | Funds Available (Initial) ⟋⟍ |

| SIGNATURES | | DATES | |
|---|---|---|---|
| CARD HOLDER | Rebecca Smith | 7/18/02 | |
| CONTRACTING OFFICER | | | |
| CCM/APPROVING OFFICIAL'S | Cindy Jan | 7/18/12 | Receiving Report No.: |
| RECEIVING CLERK | | | |

Purchase is requested of the following listed articles, which may be procured from the firm listed above or from other available source.

| Inmate's Name (Printed)<br>DONALD JAMES MONACO | Register No.<br>13314-086 | Inmate's Signature<br>Donald James Monaco | Date Signed<br>7-10-02 |
|---|---|---|---|
| Approving Official's Signature (Warden if Item is over $100.00)<br>P. Krimson, Actin WMgr 7/12/02 | | 7/19/02 | FRP Compliance (Initial) |

| t number | Description of Articles | Quantity Reqted | Orded | Rvcd | Unit price Est | Actual | Amount Est | Actual |
|---|---|---|---|---|---|---|---|---|
| 0100 | K- Swiss Classic to Size 9 | 1 pr. | | | | 49.99 | | 49.99 |
| 00100 | K- Swiss Classic to Size 10 | 1 pr. | | | | 49.99 | | 49.99 |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| | | Inmate Est | Pur Est | Actual |
|---|---|---|---|---|
| MY COMMISSARY ACCOUNT HAS BEEN CHARGED AND I HAVE RECEIVED THE ARTICLES LISTED ABOVE. | TOTAL VENDOR COST | | 99.98 | |
| | MARKUP (RETAIL) 5% | | | |
| | SELLING PRICE | | 99.98 | |
| Inmate's Signature          Date | DELIVER CHARGE + 3 day Rush/Sec | 20.97 | (8.98 + 11.99) | |
| | TOTAL SELLING PRICE | 120.95 | 1025.95 | |

| Approving Dept | Purchasing | Accounting | Warehouse | Commissary | R & D | Other |
|---|---|---|---|---|---|---|

Th   orm may be replicated via WP)                      This form replaces BP-S200.045 DTD Aug 97

Printed on Recycled Paper

108.76
120.95

*routine medical care at FPC Duluth, is subject to change to meet the changing needs of the inmate population. During Admission and Orientation (A&O), you are provided a copy of the current schedule. Areas covered in the schedule are: routine sick call, appointment sign-up, prescription refill requests, prescription pick-up, restricted pill lines.*

*Any prescription that is necessary due to a medical appointment will be dispensed to you before you leave the clinic, if possible. When requesting a prescription refill, it is mandatory that you turn in the labeled container. When reporting to any appointment you must bring all of your medication bottles with you, including the medications you purchased in the commissary, for screening. Although infrequent, for new therapy, an occasional delay in filling your prescription may occur. You may request an appointment with the Pharmacist to discuss your medications via sick-call sign up.*

*For any concern you may have regarding Health Care at FPC Duluth, you may send an "Inmate Request to Staff Member" form to the Health Services Administrator (HSA) who will provide you a written response. You may also request to speak with the HSA personally by attending the "HSA's OPEN HOUSE" which is held on Wednesdays between the hours of 10:30 - 11:30 a.m.*

*Consider yourself "OUT OF BOUNDS" and subject to disciplinary action if you do not have an appointment in the clinic, or permission to be in the clinic during the regular sick call appointment times and pill lines. You must have your work supervisor or dorm officer call the clinic if, you feel the need for urgent medical care after routine sick call.*

***DO NOT LEAVE YOUR ASSIGNED WORK AREA WITHOUT PERMISSION FROM YOUR SUPERVISOR.***

*It is your responsibility to check the CALL OUT roster on a daily basis. The rosters are posted in all dormitories and work sites. If you have any questions, ask any staff member. Missing a medical call out may result in disciplinary action, as stated by policy.*

*Within the first 14 days of your admission into FPC Duluth, you will receive a mandatory complete medical evaluation. You are entitled to a physical evaluation every 2 years, if you are under 50 yrs old or, annually if you are 50 yrs and older. Also, if you have not had a physical examination twelve months prior to your release date, you may request a physical examination.*

*Prior to leaving FPC Duluth, for halfway house, Community Correction Center, or furlough, you will be tested for the HIV virus, as required by BOP policies. This is a mandatory test. Failure to permit the testing could result in loss of community corrections eligibility and/or furlough. You may also be included in a random HIV test group and a HIV test may be ordered if clinically indicated. This again is a mandatory test. HIV testing may also be done at your request one (1) time per year.*

*All inmates are given the opportunity to initiate a living will and advanced directives while at FPC Duluth. If interested, contact the Health Services Administrator.*

*All inmates are urged to participate in the institution's Health Promotion and Disease Prevention Program (HPDP) that is offered. Areas covered include, but not limited to: fitness, nutrition,*

HANGLOON

# DISCIPLINARY PROCEDURES

*While informal resolution for incidents involving violation of Institutional rules is encouraged, an employee may, in cases where this appears unwarranted due to the seriousness or repetitiveness of the infraction(s), prepare an Incident Report for submission to a Correctional Supervisor. This official may then dispose of the matter informally or forward the report to the Unit Discipline Committee for further disposition consistent with the Bureau of Prisons Program Statement on Inmate Discipline, 5270.07.*

*The UDC shall review the Incident Report and evidence making one of the following findings:*
1. *The inmate committed the prohibited act as charged or a similar one.*
2. *The inmate did not commit the prohibited act or a similar act.*
3. *Refer the Incident Report to the Discipline Hearing Officer for final disposition.*

*The Discipline Hearing Officer shall review the Incident Report and evidence, and may do any of the following:*
1. *Dismiss the charge(s) and find the inmate did not commit the prohibited act(s).*
2. *Find the inmate did commit the prohibited act(s) and impose one or more of the sanctions.*
3. *Suspend execution of a sanction.*

*If you have any questions concerning inmate discipline, you should refer to the Program Statement on Inmate Discipline, or contact a member of your Unit Team.*

## ADMINISTRATIVE REMEDY

*When inmates have complaints which they believe cannot be resolved informally, then the Administrative Remedy procedure is available. A complaint must be filed within twenty (20) days of the date on which the basis for the complaint occurred.*

*To file a Request for Administrative Remedy, see your Correctional Counselor, who will issue you the form and instruct you in the procedures to be followed. The Warden, or his/her designee, will have twenty (20) days in which to respond. In emergency situations, such as those jeopardizing an inmate's health or welfare, a response would be forthcoming as soon as possible and within 48 hours of receipt of the complaint.*

*Should you wish to appeal an institutional level decision, a similar request is may be submitted to the Regional Director (contact your Correctional Counselor for procedures). If still unresolved, the final step in the Administrative Remedy procedure is to appeal to the office of the General Counsel in the Central Office in Washington, D.C. Each of these administrative appeals also have time limits associated with them. You will receive a written response. For further information about the Administrative Remedy procedure, consult the current program statement on Administrative Remedies. Generally, you must exhaust your administration appeals before filing a suit in court.*

## MEALS AND DINING ROOM PROCEDURES

*The food Service Department offers three (3) balanced and nutritious meals per day. The Food Service Department is set up much like a cafeteria, in that some of the items that we serve on the serving line are rationed items. This means that you are only allowed a specific serving size of those particular items. You may get as much as you would like of un-rationed items, we just*

30

| TO: (Name and Title of Staff Member) Dr. Barton (Medical Doctor) | DATE: 2-21-03 |
|---|---|
| FROM: Don Monaco | REGISTER NO.: 13314-006 |
| WORK ASSIGNMENT: Kitchen - Day | UNIT: 208 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

I respectfully request to see an honest & qualified outside cardiologist about my chronic heart problems I've been having more frequently over the past several months now. As you know, I have a well documented history of heart problems as well as a family history of such. You should also be aware of the 30 plus pages of pre-arrest medical records I provided to the medical department from my outside cardiologist, Dr. Gary Archer out of Anchorage, Alaska. Dr. Archer recommended a yearly treadmill stress test and a Doppler Sonogram to monitor my calcified aortic valve. As you might know, I've been having palpitations, shortness of breath + mild chest, arm + jaw pain from time to time along with anxiety + panic disorders associated with my physical + psychological conditions. Please grant me a full physical + heart evaluation. Thanks, (Do not write below this line) Don Monaco

CC: DM/MF
DISPOSITION:

You are scheduled to see me. Watch the call-out for an appointment and we can discuss medical issues at that time.

| Signature Staff Member | Date 3/4/03 |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98

**U.S. DEPARTMENT OF JUSTICE**        **FEDERAL BUREAU OF PRISONS**

| TO: (Name and Title of Staff Member) (Dr. Barton) Medical Doctor F.P.C. Duluth | DATE: 2-1-03 |
|---|---|
| FROM: Donald James Monaco | REGISTER NO.: 13314-006 |
| WORK ASSIGNMENT: Day Kitchen | UNIT: 208 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.) <u>Dear Dr. Barton</u>, I arrived Wednesday evening by way of transfer fron F.C.I. Waceca on 1-22-03. I was briefly screened by medical staff member Espinal. Mr. Espinal was very nice and took a little more time with me because of the many medical issues and history I have. However, Mr. Espinal overlooked my <u>soft-shoe</u> requirement, because I was incorrectly issued hard steel-toed boots the very next morning. I have a severely compromised right foot that was crushed in a terrible motorcycle accident during the late 1980's. My foot injury required immediate emergency surgery and reconstruction of a serious nature. During the operation, I unfortunately lost the main artery that runs down the top of the foot towards the big toe. I also suffered major nerve, ligament and bone damage. The fractures were compound in nature and blew out the side of my foot towards the top-middle and outside area of the big toe side and center of the foot. The surgeons initially placed 13 stainless steel pins inside the foot to set the fracture and stabilize the wound. An eventual muscle flap and skin graft procedure were also preformed at later dates. I was hospitalized on 2 seperate occasions for approximately 6 months and nearly lost my right leg due to a serious infection while the wound had not yet been closed up. The foot is still extremely sensitive and lacks full range of motion and blood circulation to this day. Stiffness and arthritic problems are more prevalent in this severely cold and long winter weather climate area. The extra-long walks required throughout this large prison compound area have also aggravated my preexisting foot condition.

It's quite clear from my prison records at F.C.I. Waseca and F.C.I. Terminal Island and beyond, that I have a soft-shoe requirement and foot problem of a serious nature. I should not be incorrectly forced to wear uncomfortable steel-toed boots or shoes that aggravate my condition. The boots that were forced upon me directly cut into the sensitive top part of my preexisting injury which was extremely painful and totally unnecessary. The new injury from the steel-toed boot was centered directly ontop of the skin graft, scarring tissue and nerve damaged

CC:DM/MF        (Do not write below this line)        (Cont. on attached page)---

DISPOSITION:

*Watch the call-out for an appointment.*

| Signature Staff Member | Date 2/21/03 |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated OCT 86
and BP-S148.070 APR 94

**HEALTH SERVICES**
**FEDERAL PRISON CAMP**
DULUTH, MN 55814


Printed on Recycled Paper

area of my foot.

  I immediately reported to sick call on Monday morning, 1-27-03, and I was told by the physician assistant that she was not allowed to write up a soft-shoe permit for anyone. She also examined the new cuts and old injury by visually looking at my damaged foot. This assistant also wrote up an immediate request for a low cut steel-toed shoe that I received on Monday the 28th. Even though the new steel-toed shoe is less painful than the hard boot, the steel-toe and shoe-seam in this low cut shoe still aggravates my preexisting injury and foot condition. The only type of shoe that I have been successfully able to tolerate for the past 13 years of my life since this horrific injury has specifically been soft tennis shoes only. As a matter of fact, Dr. Gray at F.C.I. Waseca even bought me a pair of soft low cut tennis shoes and a custom made pair of perscription orthodics out of the FBOP's money since I have effectively used this combination over the past 13 years prior to and during my unconstitutional conviction and false imprisonment. Dr. Gray also allowed me to buy a few pairs of my own hand picked soft tennis shoes from an approved outside source once every year in order to help me alleviate my ongoing suffering and foot related problems while at F.C.I. Waseca. I was warehoused at F.C.I. Waseca for approximately 3.5 years.

  In conclusion, I respectfully request that you thoroughly examine my damaged right foot for yourself and review my well documented prison and outside medical records in order to correctly issue the soft-shoe permit that I rightfully need and deserve. Anything less might possibly be considered Cruel and Unusual Punishment under the 8th Amendment to the United States Constitution as well as Diliberate Indifference to Serious Medical Needs. I also request that I be placed on a minimal institutional job position that requires less walking and standing on my feet for prolonged periods of time. I was assigned to a utility yard crew position in the evenings at F.C.I. Waseca which seemed to work out O.K. most of the time I was forced to be there.

  Besides the above foot problems, I need to speak with you candidly about my other chronic medical issues which have not been properly addressed, discussed or favorably resolved with you, Dr. Gray or the Federal Bureau of Prisons as of yet. This includes unresolved issues pertaining to my chronic migraines, heart, liver, spleen, herpes and psychological medical issues of a serious nature.

  Please respond to me in an expedited fashion due to the serious medical nature of my complaint as clearly shown under the highlighted sections of the Administrative Remedy Policy Statement 1330.13 and the A&O Handbook section attached herewith.

  Thanks in advance for your time and expert care on these critical issues pending.

Dated: _2-3-03_

Respectfully and truthfully submitted to the best of my knowledge under the penalty of perjury and laws of the United States of America. Title 28 U.S.C. § 1746 and Title 18 U.S.C. § 1643.

_Donald James Monaco_

Donald James Monaco
13314-006, Unit-208
P.O. Box 1000, F.P.C.
Duluth, MN  55814

S148.055 **INMATE REQUEST TO STAFF** CDFRM
98

S. DEPARTMENT OF JUSTICE         FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member)<br>Dr. SAM Petrie (Dentist) | DATE:<br>12-25-02 |
|---|---|
| FROM:<br>Don Monaco | REGISTER NO.:<br>13314-006 |
| WORK ASSIGNMENT:<br>Yard - 2 | UNIT:<br>B |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

Dear Dr. Petrie, I'm sad to say that my left lower gum has remained extremely sore since you last replaced my filling a few weeks back. I don't think that you flared the filling out far enough to prevent food from impacting the lower outside of the gumline. Now I can't use either side of my mouth to properly chew or crunch down on food. I respectfully request that you can repair the left side you just worked on & I also request that you can temporarily or permanently replace the missing tooth on the right lower side for health related reasons. The reason the left side of my teeth are breaking down is because I can't & haven't been able to properly use my right side because of the missing tooth. These problems are tending to serious health related issues that a proper solution has to be resolved before my health starts to deteriorate even further. THANK YOU, Don Monaco CC: DM/m.
Please put me on the call out.

DISPOSITION:

You have an appointment tentatively scheduled for next week to evaluate your recently placed filling.

**FCI WASECA**

| Signature Staff Member | Date<br>1-13-03 |
|---|---|

Record Copy - File   Copy - Inmate
(This form may be replicated via WP)
   This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

**INMATE REQUEST TO STAFF**
**MONACO, Donald**
**Reg. No. 13314-006**

This is in response to your Inmate Request to Staff received on November 14, 2002, in which you allege prejudicial treatment by a member of the medical staff, request an investigation into alleged wrongdoings by the medical staff, and request reassignment to another primary care provider.

Based on the information you have provided, I have confirmed that you were seen on October 27, 2002 for complaints of heart palpitations. On that date you were examined and a diagnostic EKG was performed. The results of that EKG were determined to be normal, however you were instructed to return to health services if symptoms persisted or increased in severity. On October 28, 2002, you were placed on convalescence until October 31, 2002. On October 31, 2002, you failed to make sick call and then requested that the unit officer contact health services requesting that you be seen. Contrary to your beliefs, the unit officer spoke with Mr. Carrasca, PA, rather than Ms. Peterson, PA-C. This fact refutes your claim of prejudicial treatment by Ms. Peterson, as she did not deny you care. You were not seen on that date due to the apparent non-emergent nature of your complaints. On November 1, 2002, you reported for sick without the proper request form. As your request for care was not deemed an emergency by the clinician, you were requested to return with the proper paperwork. You did not comply with this request. You next complained of heart palpitations at your scheduled chronic care examination conducted by the clinical director on December 3, 2002. While you exhibited no symptoms at that time, the clinical director agreed to request medical records of care you have previously received, and based on that information, consider the options of additional diagnostic evaluations.

I find no evidence of negligence or denial of care. You have been provided care appropriate to diagnostic evidence and clinical observations. With no compelling evidence to warrant such action, I decline to re-assign your care to an alternate provider.

Alan R. Jorgenson, HSA                     12/12/02
                                            Date

Handelivered to Mr. Dufty on 11-28-02 A.M, C.C. 95̄

d rejected by IngVlladson At Approx.
12 P.M. on Dec 3rd of 2002.
(see Attached)

Number:   WAS-1330.13
Date:     February 22, 2002
Subject:  ADMINISTRATIVE REMEDY
          PROGRAM
Attachment A

## INFORMAL RESOLUTION ATTEMPT

**In accordance with Program Statement 1330.13, Administrative Remedy Program, this form will serve as documentation by the respective staff member and the Unit Manager to indicate an informal attempt to resolve the complaint of the following inmate.**

**A BP-9 WILL NOT BE ACCEPTED WITHOUT THIS COMPLETED FORM ATTACHED.**

NAME: Monce D                    REGISTER NO: 13314-006

DATE ISSUED: 11-27-02            STAFF: _____

1. **Nature of complaint (to be completed by inmate):** To All medical + executive
staff it may concern, the following attached formal
complaint was first mailed on 11-12-02 from the Unit-
B mailbox. I requested a 7 day response time from Health
Administrator, Alan Jorgensen, since the complaint deals with several
medical issues of a serious nature. At the time of the filing
of this complaint, no response to me has been made. I respectfully
request an immediate 3 day response to these pending (attached)
issues which is allowed + pointed (but on page 11 of policy statement
1330.13 dealing with immediate health, welfare + emergency issues. Thanks in

**FOR STAFF USE ONLY (to be completed within five working days)** Advance, Don Monce
cc: DM/mf 11-27-02

2. **Date received from inmate:** 11-29-02

3. **Staff member assigned by Unit Manager:** _____

4. **Efforts made to resolve the problem:** _____
   _____
   _____
   _____

5. **Applicable Program Statement used in this informal resolution attempt:** _____

6. **Inmate's response to informal remedy attempt:** _____
   _____
   _____
   _____

**Prepared by:** _____
**Received by Unit Manager:** _____
**Date returned to inmate:** _____

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE        FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) Mr. Alan Jorgenson (Health Administrator) | DATE: 11-8-02 |
|---|---|
| FROM: Don Monaco | REGISTER NO.: 13314-006 |
| WORK ASSIGNMENT: Yard- 2 | UNIT: B |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

Dear Mr. Jorgenson, I respectfully come forth to make the record with yet another formal complaint against the Waseca F.C.I. medical department, and medical staff member, Karen Peterson (PA). As you should already know, I have a history of cardiac problems, I also have a very well documented history of anxiety - pannic disorder. I have well documented premature ventricular contractions, a calcified aortic valve which is abnormal, mild aortic insufficiency, possible coronary artery spasms, ect. (Please see my prison medical & psychological files. I also have approximately 150 pages worth of pre-prison emergency hospital and private cardiology and internal medical doctor files which I can get to (see attached) →

CC: DM / MF

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
| | |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94


Printed on Recycled Paper

On or about Thursday, Oct. 31st, I woke up late in the morning and experienced severe palpitations, and heart fluttering which included shortness of breath, and some pain, and severe anxiety. I immediately went down and reported to unit-B officer Brian Schulz at approximately 10:30 A.M. and told him what was happening to me. I told him that I have a history of cardiac problems and he called the medical department. officer Schulz apparently spoke with (P.A.) Karen Peterson about my medical emergency. It was a very unusual, ignorant, and incompetent conversation from what I deciphered on my end. From what I gathered on the Schulz end of the conversation, I was incorrectly denied the right to report to medical in my emergency situation by (PA) Karen Peterson. After I was wrongfully denied my right to report to medical by Schulz, the person on the other end in medical (Peterson) purposely tried to conceal their identity through Schulz. He refused to tell me who denied me my right for medical attention. At this point I became extremely upset and sought help at the mainline. Ms. Jane Craig (HSA) told me that she was aware of my situation and that I just needed to wait. Craig told me that medical might call me back later in the day, but they never did.

On or about Nov. 1st, which was Friday, my symptoms persisted. (PA) Karen Peterson was working the morning of the 1st when I went to medical prior to 7 A.M. and tried to explain that I was having some severe ongoing medical prob-

CC: DM / MF

-2-

you upon your request).

For several weeks starting on or about 10-21-02, I started experiencing a series of abnormal rhythms with my heart, which included shortness of breath and some mild chest and arm pain. I reported to the medical department on or about Sat. or Sunday, Oct. 26th or 27th. Medical staff member Kirk Alford performed an EKG on this above emergency visit. Mr. Alford seemed unusually concerned about why I had chosen to wait until the weekend to come to medical instead of during the week. I told him that my condition had worsened abruptly. I told Alford that these abnormal heart beats come and go at random. The EKG did not pick up any abnormalities at that moment. I was told by Alford to notify medical, if things continued to get worse. He also told me to come back to sick call on Monday.

I reported to sick call on or about Monday, Oct. 28th. I was told by Ms. Linda Brandt (PA), that I would be put on the call-out sheet by (P.A.) Karen Peterson. I was also told that if my symptoms persisted or got any worse, that I should have the unit officer call medical and come back if needed. I was given a one-day convalescent status by Ms. Brandt that mentioned for me to come back if needed. (Please see this convalescent record).

lems with my heart. I told Peterson that I have a history of cardiac problems. Peterson abusively refused to see me because she said that I did not have a sick call slip properly filled out or with me. I tried to tell her that my problems were stemming from an ongoing medical emergency heart problem, but she would not listen. She became very rude, disrespectful and unprofessional towards me at that point. She abusively told me in a very loud and threatening tone of voice that the medical department was not going to see me because I refused to follow her directions. I left the medical department not feeling very well physically or psychologically. I left feeling completely disillusioned by Karen Peterson's ongoing unprofessionalism which directly reflects on this medical department's ongoing incompetence.

This series of uncalled for incidents and neglect clearly show that Karen Peterson is obviously prejudiced against me. I feel as though Karen Peterson is retaliating against me because of the last formal complaint I filed against her for abusively yelling at me in a demeaning manner during one of my last chronic migraine attacks. Karen Peterson also told me on Friday morning the 1st of November, that she was the one who told unit-B officer Schulz not to allow me to come to medical on the 31st of October.

In conclusion, I request that this matter be officially documented and investigated for abuse, neglect and retalitory

CC: DM/MF

-3-

tactics wrongfully being used _AGAINST_ me by Karen Peterson and the WASECA, Medical Department in General. No person should be denied the proper medical or emergency room attention or treatment for heart problems or PANNIC - ANXIETY disorders when they arise at this institution or elsewhere. Especially when the patient has a clear and precise medical record, of these problems.

These continuous wrongdoings need to be promptly corrected. The neglect and unprofessionalism, are obvious policy violations under employee conduct and medical-health policies. These ongoing violations are also considered cruel and unusual under the 8th Amendment to the United States Constitution, which also clearly shows _deliberate indifference to serious medical needs._

Dr. Frenzel is also very well aware of my emotional and physical related medical problems, but the psychology department also improperly refuses to deal with my ongoing medical issues properly. I request that I be treated properly, fairly and professionally for all of my on-going medical conditions as they arise or continue.

I also request that II be placed under the immediate medical care and assignment of the very decent, fair and professional, Ms. Jacquelin Zimmer, instead of the very unprofessional and abusive mistreatment of Karen Peterson. I am in fear of my life, safety and wellbeing anytime I am around or forced to deal with the ongoing unprofessional abusiveness of Karen Peterson. I do not feel as if

CC: DM/MF

-4-

(PA) Karen Peterson is professional and competent enough to take care of me and my very serious medical needs.

Please respond to me within 7 working days from the reception of this official complaint. A full scale investigation and evaluation is needed into these on-going incidents and medical and emotional neglect.

Dated: 11-8-02

Donald James Monaco
Respectfully and truthfully submitted under the penalty of perjury. Title 28 U.S.C. § 1746 and Title 18 U.S.C. § 1641.

CC: DM/MF

-5-

FCI WASECA
Health Services Department

Inmate Name _Monaco, Donald_  Register # _13314-006_

Unit ___B___   Detail ___—___


Mr Monaco:                           12-10-02

Your liver tests remain elevated
(ALT = 101). If you want to talk about
being considered for treatment of your
Hepatitis C, please let me know.
Otherwise, we will continue to check
your liver function every 6 months.

                          M. Gray

                          M.A. Gray, M.D.
                          Clinical Director
                          FCI Waseca

From:         Anthony Walker
To:           WAS/Clinical Director;  WAS/Health Svcs Admin
Date:         10/29/02 2:37PM
Subject:      BP 11 Inmate Monaco 13314-006

Please forward clinical notes, consultations, MRI or CT studies, or pertinent information concerning this
inmates complaint of migraine headaches. Fax me or mail as soon as possible. Thank you for your
assistance.

Anthony A. Walker, BCHS,  PA-C
 LTJG, USPHS
Health Programs Manager
Central Office
202-307-2867 ext. 112
Fax 202-305-0862


CC:           Nelson, Mike

DATE OF RELEASE: _11-5-02_
Number of Copies: _99 pages_

Items Released: _Copies of all medical records_
_pertaining to migraine headaches faxed to_
_[anthony] Walker PA-C in Central Office_

FCI WASECA

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE

☆ Mailed on 10-1-02 in
The regular B-unit mailbox
D.M. [signature]

FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) MR. Jorgenson (Health Administrator) | DATE: 9-30-02 |
|---|---|
| FROM: Don Monaco | REGISTER NO.: 13314-006 |
| WORK ASSIGNMENT: Yard - 2 | UNIT: B |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

Dear Mr. Jorgenson, I'm writing this cop out in regards to yet Another unprofessional incident that came about with Another one of your staff members during An emergency visit to medical at 11:30 A.M. on 9-29-02. K. Alford got smart And very Rude with me right off the bat when I Arrived in temporary blindness due to one of my chronic migraine headaches. I tried to explain to him what was going on with my headache + the fact I'm currently litigating the improper denial of stronger pain medication And he told me that he didn't care And to wait. Then he brought me back to a room + Asked me A few questions + wrote a few things down. He started yelling at me in a demeaning fashion which is against policy + common sense. I told him not to raise his voice or yell at me + he stopped. He also got upset when I Asked for stronger pain medication Again. Then he calmed down Again And wrote my classification status + told me that it was not his decision not to give me stronger pain medication before I left. Please make the record as such + respond to me ASAP. No one needs to be yelled at or treated unprofessionally any longer by your department. I know there are major investigations under way. Thanks, Don Monaco. Especially when we are sick + need help.

**Disposition :**

Thank you for your comments. I have spoken to the employee who provided care to you. The employee provided care consistent with established guidelines and approved by the Clinical Director. I am unaware of any investigations.

| Signature of Staff Member ALAN R. JORGENSON CAPT. USPHS HEALTH SERVICES ADMINISTRATOR | Date 10/7/02 |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

SEP 98
U.S. DEPARTMENT OF JUST[    ]                    F    ERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member). | DATE: 5-15-02 |
| Dr. Grey - Medical Doctor | |
| FROM: Don Monaco | REGISTER NO.: 13314-006 |
| WORK ASSIGNMENT: Yard - 2 | UNIT: B |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

I request to see you or a P.A. in Medical to take
a sample of an abnormal skin lesion on my head. I
just noticed this growth on the left side below my hairline. I'm
concerned that it could be cancerous. My mother just had
a malignant growth removed from her nose at Stanford Medical Center a few months ago.

Can you please call me in to look at this for testing some afternoon
in the nearest possible opening.

Thank you

Don Monaco

cc: DM/MF

(Do not write below this line)

DISPOSITION:

Mr. Monaco!
Please sign up for sick
call to have one of the staff
look at this lesion.

FCI WASECA

| Signature Staff Member | Date 5-24-02 |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

Printed on Recycled Paper

+ Printed on 5-13-02 A.M.                    + 1 more BP-8 & 29s          Wedresdays we
                                                                         relase out.

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP .98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO: (Name and Title of Staff Member) Dr. Grey  Medical Doctor | DATE: 5 - 10 - 02 |
|---|---|
| FROM: Don Monaco | REGISTER NO.: 13314 - 006 |
| WORK ASSIGNMENT: Yard - 2 | UNIT: B |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

I respectfully request to see a Neurologist about my chronic migraines
and the opinion of a second medical doctor about the denial of Stadol
pain medication as I've successfully used and have been prescribed by my regular
and emergency room physicians over the past 30 plus years. Accord-
ing to the Supreme Court case Estelle v. Gamble, 429 U.S. 97, 97 S.Ct.
285, 291 (1976) prison officials can be in violation of 8th Amendment
Constitutional Rights which protects from " Cruel and Unusual Punishment "
if found to be in " Deliberate Indifference " To " Serious Medical needs. "

Thank you.
             Don Monaco

CC: DM / MF
                        (Do not write below this line)

DISPOSITION:
    Mr. Monaco:
        Since you have very rarely requested
refills on Imitrex I would assume you haven't
needed it often. You have always said it
helps. The fact that you have refused to
even try injectible Toradol is disturbing.
We do have other medications for chronic use
we could try. Certainly, narcotics are a poor choice.
                                                            (over)

    Signature Staff Member                    | Date
         Nea Grey M.D.                         | 5 - 20 - 02
                                  Clinical Director
Record Copy - File; Copy - Inmate     FCI Waseca   This form replaces BP-S148.070 dated Oct 86
(This form may be replicated via WP)               and BP-S148.070 APR 94

06-220-U

002 036-41

(cont) 5-20-02

A neurologist can be consulted but we
should really use what is at our
ready disposal before we go this route.

M.A. Gray

M.A. Gray, M.D.
Clinical Director
FCI Waseca

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO: (Name and Title of Staff Member) Mr. Jorgenson, Health Services Director | DATE: April 20, 2002 |
|---|---|
| FROM: Don Monaco  *Dn Monaco* | REGISTER NO.: 13314-006 |
| WORK ASSIGNMENT: Yard-2 | UNIT: B |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

Hello, this is Donald James Monaco, federal prisoner number 13314-006, and I respectfully come forth in an appellate fashion for the following reasons stated herewith:

#1) Dr. Gray refuses to prescribe Tylenol-Codine or stronger pain medication as needed for my chronic migraine headaches at random. These vascular headaches are documented since my early childhood and have been successfully treated by my private physicians or emergency medical professionals for 30 plus years. Demerol was normally prescribed and always worked effectively prior to my unlawful restraints. Even the neurologist and medical doctors at Terminal Island prescribed Tylenol-Codine or stronger if needed. (Please see my medical files.)

I've decided to bring this issue to the forefront because I'm simply tired of suffering unnecessarily from these headaches and other serious medical issues I have on a continual

CC: DM / MF                    (see attachment)
                    (Do not write below this line)

DISPOSITION:

**Thank you for your observations and comments concerning your medical care and the medical staff at this facility. Working within the confines of our drug formulary, each evaluating clinician has the authority to decide and prescribe the treatment regimen for patients under their care. I urge you to continue to work with your prescribing clinician and consider trying the medications offered to you.**

HEALTH SERVICES
FCI WASECA

LEN R. JORGENSON Member
CAPT. USPHS
HEALTH SERVICES ADMINISTRATOR

Date 5/3/02

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

basis. I'm also tired of being put off and not properly or professionally treated by some of your medical staff members. This sometimes includes Dr. Gray and his wrongful opinions, arrogance, and non-communicative attitudes on occasion.

Dr. Gray told me on 4-17-02, that he just doesn't have the time to answer my cop-outs in writing because he has 1200 other inmates that he also has to deal with. But then he went on to tell me that I can file complaints until "I'm blue in the face" if I wanted to. I've decided to take him up on his arrogant offer. I've also decided to contact a major national medical prison watch project in order to open up a possible dialogue about these and other prison-related medical issues I have.

In closing, I'm not interested in experimenting with other new types of drugs like Dr. Gray and the very rude Ms. Peterson have wrongfully tried to force upon me. (Please see attached.) I want to stick with what has been successfully proven to work for me over the past many years. The Imitrex and Aspirin help somewhat, but the seriousness of the pain and vulnerability that these massive headaches cause are tremendous. Please reconsider the stronger pain medication for me at these critically disabling times.

Thank you.

Dated: _4 - 20 - 02_

Respectfully submitted by:

Donald James Monaco
13314-006, Unit-B

cc: DM/MF

*Rec. CN
4-19-07

* Migraine Recommendation
Dr. Gray.

**FCI WASECA**
Health Services Department

Inmate Name __Monaco, Donald__ Register # __13314-006__

Unit _____B_____      Detail _____—_____

Mr. Monaco:                    4-17-02

I will be unable to order Toradol tablets for you since it has recently been removed from our formulary. I agree with PA-C Peterssons recommendation to use an injection of Toradol with an injection of Phenergan if the Cimitrex and aspirin combination don't control your headache. You will need to have staff notify medical if this is the case. You may request that staff accompany you to medical if you are unable to get here on your own.

M.A. Gray

M.A. Gray, M.D.
Clinical Director

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98

**U.S. DEPARTMENT OF JUSTICE**                **FEDERAL BUREAU OF PRISONS**

| TO: (Name and Title of Staff Member) DR. Gray - Medical Doctor | DATE: 4 - 20 - 02 |
| FROM: DON MONACO | REGISTER NO.: 13314 - 006 |
| WORK ASSIGNMENT: Yard - 2 | UNIT: B |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

Dear Dr. Gray,

As per your conversation about ordering shoes from
a catalog, I respectfully request that you give me
permission to order two pairs of regular while K-
Swiss Tennis shoes as attached in the copy provided.
Approval in writing from you, on this, I issue will speed
up my ordering process through Counselor Duffy.

Please respond in writing. Thank you.

Don Monaco

CC: DM / MF

(Do not write below this line)

DISPOSITION:

Mr. Monaco:
As per our conversation of 4/17/02
and with your documented surgical
changes in your right foot, it would
be advantageous to allow you to
special order the K-Swiss tennis shoes.

| Signature Staff Member | Date |
| | 4 - 29 - 02 |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)   M.A. Gray, M.D.   This form replaces BP-148.070 dated Oct 86
                                       Clinical Director   and BP-S148.070 APR 94
                                       FCI Waseca

 Printed on Recycled Paper

Received in H/S 4-22



**Tennis**

48
ESM2   TENNIS/ CHEERLEADING   PLACE YOUR ORDER 24 HOURS A DAY EVERY DAY   or eastbay.com   AMERICA ONLINE KEYWORD: EASTBAY

P.S. 5511.05
March 3, 1994
Attachment A, Page 1

BP-S148.70    INMATE REQUEST TO STAFF MEMBER    CDFRM
Oct. 1986
U.S. DEPARTMENT OF JUSTICE                Federal Bureau of Prisons

                                                    DATE: 4-2-02
TO: Mr. Jorgenson (Chief Medical Administrator)
          (Name and Title of Officer)          CC: DW/AW

SUBJECT: State completely but briefly the problem on which you desire assistance and what you think
should be done (Give details).

Dear Mr. Jorgenson, I was given a pass, to visit medical
as suggested by Dr. Gray as my attented appoil dealing with
random severe migraine headaches. (E-A) Ms. Peterson was the
P.A. who evaluated my condition during this Govidoni visit.
Ms. Peterson was very demanding and extremely rude
to me during this visit. She was combative and extremely
disrespectful towards me, my illness, and my input and suggestions.
At a certain point towards the end of my confrontation with this
woman, I felt as if she was trying to intimidate me
which is against the Program Statement # 3420.08, which is in
violation of the Professional Code of Employee Conduct under the
U.S. Code of Federal Regulations Title 5./§ 2635. (Please see the
attached highlighted statement, E-B). I ask that this formal complaint
be investigated and documented against Ms. Peterson, and that appropriate
action be taken in this matter so JT does not ever happen again. WI am a human
being, not an animal, and expect to be treated as such, especially when in sick
NAME: Don Monares                          No.: 13314-006
Work Assignment: Yard-2                    Unit: P

NOTE: If you follow instructions in preparing your request, it can be disposed of more promptly and
intelligently. You will be interviewed, if necessary, in order to satisfactorily handle your request. Your
failure to specifically state your problem may result in no action being taken.

DISPOSITION: (Do not write in this space)          DATE 4/17/02
                                        ALAN R. JORGENSON
                                        CAPT. USPHS
                                        HEALTH SERVICES ADMINISTRATOR

Thank you for your observations and concerns.

                                        HEALTH SERVICES
                                        FCI WASECA

Received in HS unit

Inmate Name ___Monaco, Donald___ Register # ___13314-006___

Unit _____B_____ Detail ___—___


M. Monaco:                    4-17-02

        I will be unable to order Toradol
tablets for you since it has recently
been removed from our ~~tablets~~ formulary. I
agree with PA-C Petersons recommendation
to use an injection of Toradol with
an injection of Phenergan if the
elmitrex and aspirin combination
don't control your headache. You
will need to have staff notify
medical if this is the case. You
may request that staff accompany
you to medical if you are
unable to get here on your own.

                                M.A. Gray

M.A. Gray, M.D.
Clinical Director

DATE  3-24-02

TO: Dr. Gray - Medical
CC: DM/MF
(Name and title of officer)

(See Attached
(continued

SUBJECT: State completely but briefly the problem on which you desire assistance, and what you think should be done (Give details)

Dear Dr. Gray, I spoke with Mr. Jorgensen at mainline last week about my chronic migraine problems in relationship to work and sick call conflict issues that may arise due to the random nature of these terrible vascular headaches. Mr. Jorgensen said that he would further discuss the issue with you since I told him that you had just recently responded to me about this specific issue.

(Use other side of page if more space is needed)

Since sick call is only offered in the morning on certain days, it seems unlikely that my migraines will surface only at these limited morning hours! Did you want me to report to my Unit Officer who in turn is supposed to contact medical personnel at the

NAME: Don Monaco                No.: 13314-006

Work assignment: Yard - 2             Unit: B

NOTE: If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently. You will be interviewed, if necessary, in order to satisfactorily handle your request. Your failure to specifically state your problem may result in no action being taken.

DISPOSITION: (Do not write in this space)            DATE  4-11-02

Mr. Monaco;
        The best I can do to respond to these very lengthy copouts is to put you on callout so we can talk about them.

Officer
M.A. Gray, M.D.
Clinical Director
FCI Waseca

Original - File
Canary - Inmate

onset of a headache? I ask this because you mentioned that you want me to report to sick call when I come down wi. a migraine. I told you in my last request that my vision goes completely out to the point of blindness for a period of up to one hour at the onset of these headaches. I don't think walking al. the institution trying to find the medical department is a good iden when I am blind. Besides, it puts me in a vulnerable position at risk within the institution at these times. Several hours of sleep and quiet are necessary right after the visual disorientation of these headaches in order to get my vision and equilibrium back to some degree. Then the nausea, pain and suffering sets in for many hours up to several days.

Another thing, the neurologist at Terminal Island F.C.I in San Pedro, California, prescribed stronger pain medication for me if I needed it. The Tyenol-Codine he prescribed was O.Kayed by the medical doctor. This prescription information is definately in my medical file I specifically request the same pain medication while I am here at this institution if needed at the onset of a migraine. Besides, when I went to the hospital on emergency visit on the outside for migraine with assistance, I was administered an injection of demerol for pain. (Please see the neurologist and medical doctor notes from my Terminal Island medical files).

And lastly, I want you to know and document that I am and have been under continual stress, anxiety and depression on a regular basis due to my forced stay, and extremely obnoxious and overcrowded surroundings. My frequent migraine herpies simplex, liver, heart, sleep and other diseases continually flare up because of these stress related nerve and other disorders which are negatively affecting my overall physical and mental health. Please Respond, Thank you.

Don Monroe P.A 12214 M.

BP-S148.70   **INMATE REQUEST TO STAFF MEMBER**   CDFRM
Oct. 1986
**U.S. DEPARTMENT OF JUSTICE**      Federal Bureau of Prisons

DATE: April 1st, 2002

TO: Dr. Gray - Medical Doctor
(Name and Title of Officer)

SUBJECT: State completely but briefly the problem on which you desire assistance and what you think
should be done (Give details).

Dear Doctor Gray,

I respectfully request your approval through the Medical
Department for me to "special" order a pair of tennis
shoes or two from an outside source or catalog. The reasons
are many and rightfully so.

As you already know I have severe foot problems that are on-
going with my right foot (Permanent extensive damage).
You are also aware that Ms. Zimmer has just recently made
casts for a pair of prescribed orthotics. My current soft
shoe permit still stands and my current two pairs of tennis shoes
are extremely old and worn. I have found some tennis shoes out of
a catalog that I've had good luck with on the outside. Will you
approve this? *I can pay for these shoes myself.* Thank you.
(Use other side of page if more space is needed)

NAME: Don Monaco                        No.: 133-14-006.
Work Assignment: Yard - 2              Unit: B
CC: DM/MF

NOTE: If you follow instructions in preparing your request, it can be disposed of more promptly and
intelligently. You will be interviewed, if necessary, in order to satisfactorily handle your request. Your
failure to specifically state your problem may result in no action being taken.

DISPOSITION: (Do not write in this space)          DATE _____

Staff Member

DATE 3-4-02

TO: Dr. Grey (Medical Doctor)
(Name and title of officer)

cc: DM/MF

SUBJECT: State completely but briefly the problem on which you desire assistance, and what you think should be done (Give details).

Dear Dr. Grey, There has still been no action on my request for orthodics, can you please direct your staff members to start the process? Also, due to the random frequency, visual disorientation and partial blindness, nausea and sometimes vomiting, and intense pain and suffering that I experience sometimes up to several days after a migraine headache, I respectfully ask that you allow or (Use other side of page if more space is needed) issue me some sort of temporary layin' pass from all activity at these very difficult times. These massive headaches which are vascular and random in nature cause my person to be in an extreme vulnerable position within the institution. This includes vulnerability in relationship to my assigned work position and the work supervisor who expects me to show up to work at

(continued on next pg)

NAME: Don Monaco

No.: 13314-006

Work assignment: Yard - 2

Unit: B

NOTE: If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently. You will be interviewed, if necessary, in order to satisfactorily handle your request. Your failure to specifically state your problem may result in no action being taken.

DISPOSITION: (Do not write in this space)       DATE 3-11-02

Mr. Monaco:
#1) I have spoken to Ms. Zimmer about your insoles. Hopefully, she will contact you soon.
#2) Please come to sick call or have your Unit staff call Medical when you have a headache so that we can assess you.

M.A. Gray

Officer
M.A. Gray, M.D.
Clinical Director
FCI Waseca

USP LVN          Printed on Recycled Paper          Previous editions not usable          BP-148(55)
OCTOBER 1986

Original - File
Canary - Inmate

all costs. I've had several problems with staff members or work supervisors over the years in prison because of my random debilitating headaches. The best place for me to be when my migraine starts and progresses is in bed, not at work. The blindness I experience alone, is an extreme hazard for myself as well as others around me. This includes my vulnerability from other prisoner, as well. Most laypersons don't really understand the physiology and seriousn of the headaches anyway.

In closing, I ask that you please devise some type of pass or safety net for me when this disability randomly arises. To be threatened with a shot or being forced into administrative segregation because of a random disease which completely debilitates me some times for days, would be against my Constitutional Rights under the 8th Amendment to be free from cruel and unusual punishment if forced to work under these random conditions of sickness. I remind you that sick call is only in the morning on certain days, otherwise I have no choice except to demand emergency treatment by medical staff each time these headaches arise just for documentation and sick call lay-in.

Thank you, please respond in writing as soon as you can.

P.S.- I was told that a
memorandum would
be enough to notify
the necessary staff
members of my random
debilitating condition at times

Respectfully submitted by

Don Monaco
13314-006, Unit-B.

CC: DM/MF                    -2-

DATE 1-13-02

TO: Dr. Grey (Medical - Doctor)

(Name and title of officer)

SUBJECT: State completely but briefly the problem on which you desire assistance, and what you think should be done (Give details).
C: DM/MF

Dear Dr. Grey, I'm respectfully requesting a pair of orthodics for my feet. I have been unsuccessful at locating the 2 pairs that were custom made for my feet by Dr. Barbee in Alaska. My right foot with major damage has been acting up on me from time to time and I think that my lack of the proper orthodics could be part of the problem. The orthodics I wore in my shoes (Use other side of page if more space is needed) for several years on the outside before my unlawful search and arrest took place in 1997 seemed to work very well. I understand that you now have foot-forms in order to do this process from here. Please help me with my request, I feel like I'm going completely crippled from time to time because of my damaged right foot. Sometimes it's hard for me to walk.

Thank you.

NAME: Don Monaco                              No.: 13314-006

Work assignment: YARD - 2                     Unit: B

NOTE: If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently. You will be interviewed, if necessary, in order to satisfactorily handle your request. Your failure to specifically state your problem may result in no action being taken.

DISPOSITION: (Do not write in this space)                  DATE 1-23-02

Mr. Monaco:
       I will see you in clinic next month. Since my appointments are out about that far, ask me about it then, please

                                          Officer
                                    M.A. GRAY, M.D.

Original – File
Canary – Inmate

| TO: (Name and Title of Staff Member) DR. GRAY | DATE: 12-1-01 |
|---|---|
| FROM: DON MONACO | REGISTER NO.: 13314-006 |
| WORK ASSIGNMENT: Yard-2 | UNIT: B |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

Dear Dr. Gray,

I respectfully request that you can prescribe me something to

help ease my loud snoring at night while I'm sleeping.

Thank You.

Don Monaco

cc/DM/MF

(Do not write below this line)

DISPOSITION:

M. Monaco:
     We really have no medication that
does much for snoring. Breath Rite Strips
help some people a little, but aren't available
to us. You might try gimmicks to sleep
on your side more — on the outside we
used to tell people to sew a tennis ball on back of a
T-shirt. Here you could roll up towels or try other thin...

Signature Staff Member        Date
              12-11-01


Printed on Recycled Paper

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO: (Name and Title of Staff Member) DR. Petri (Dentist) | DATE: 11-14-01 |
|---|---|
| FROM: DON MONACO | REGISTER NO.: 13314-006 |
| WORK ASSIGNMENT: YArd-2 | UNIT: B |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

Dear Dr. Petri,

Hello this request is in regards to a problem that I'm having
with the tooth you repaired for me several months back. It seems
that the filling you applied was not built up enough on the tooth
for a proper bite in that specific area. Also, the filling has worn down
slightly since then and is starting to cause a food impacting and gum
inflamation problem in that specific area again. I would like to see
you as soon as possible about this problem as it is starting to affect
my health.
            Thank you.   Don Monaco

cc: DM/MF

(Do not write below this line)

DISPOSITION:

Please Sign up for dental Sick
to have Dr. Petrie Look at the
area.

**FCI WASECA**

| Signature Staff Member | Date |
|---|---|
| Hartmann CDSA | 12-5-01 |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

**S. HARTMANN
DENTAL ASSISTANT**

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

Printed on Recycled Paper

Chestpains - aspirin - echo dopler - Blood - cardio

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98

**U.S. DEPARTMENT OF JUSTICE**        **FEDERAL BUREAU OF PRISONS**

| TO: (Name and Title of Staff Member) Dr. GRAY (Medical Doctor) | DATE: MAY 14th 2001 |
|---|---|
| FROM: DON MONACO | REGISTER NO.: 13514-006 |
| WORK ASSIGNMENT: Yard - 2 | UNIT: B |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

Dear Dr. Gray,      (The chest pains feel like someone is pinching my heart

I've had some very severe chest pains lately, especially throughout
the week of May 7th. These pains come and go periodically
like my heart palpitations do, and the pain becomes almost unbearable
at times, radiating through the left-hand side of my chest, arm, upper-back
and throat. If they persist I get short of breath and break out into
a sweat. These pains usually subside after a few minutes, then
go away. There are also a few after-shock pains that come and
go after the main one passes but those pains are not as bad as the main
one. Can I see a cardiologist or speak with one? What about a Treadmill
stress test and an echo-doppler ekg? What about some blood tests and some prescription
ASPIRIN for one-a-day? (Do not write below this line) Thanks, Don Monaco. ___/mf

DISPOSITION:

Mr. Monaco:

Your regular clinic is coming
soon. We can discuss this then

| Signature Staff Member Mia Gray | Date 5-22-01 |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)    M.A. GRAY, M.D.    This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94