# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| **Frank J. Steinhauser, III, et al.,** | Civil No. 04-2632 (JNE/SRN) |
| **Plaintiffs,** | |
| v. | **AMENDED ORDER** |
| **City of St. Paul, et al.,** | |
| **Defendants.** | |
| | |
| **Sandra Harrilal, et al.,** | Civil No. 05-461 (JNE/SRN) |
| **Plaintiffs,** | |
| v. | **AMENDED ORDER** |
| **Steve Magner, et al.,** | |
| **Defendants.** | |
| | |
| **Thomas J. Gallagher, et al.,** | Civil No. 05-1348 (JNE/SRN) |
| **Plaintiffs,** | |
| v. | **AMENDED ORDER** |
| **Steve Magner, et al.,** | |
| **Defendants.** | |

Matthew A. Engel, 11282 86th Avenue North, Maple Grove, MN 55369, for Plaintiffs Gallagher, et al.; John R. Shoemaker, Shoemaker & Shoemaker, P.L.L.C., 7701 France Ave. South, Suite 200, Edina, MN 55435, for Plaintiffs Steinhauser, et al., and Harrilal, et al.

Louise Toscano Seeba, Assistant City Attorney, 750 City Hall and Courthouse, 15 West Kellogg Blvd., St. Paul, MN 55102, for Defendants

SUSAN RICHARD NELSON, United States Magistrate Judge

This matter comes before the undersigned United States Magistrate Judge on Plaintiffs' Motion to Amend the Pretrial Scheduling Order (Doc. No. 157 in Civ. No. 04-2632, Doc. No. 134 in Civ. No. 05-461, and Doc. No. 128 in Civ. No. 05-1348); Plaintiffs' Renewed Motion for Sanctions (Doc. No. 161 in Civ. No. 04-2632, Doc. No. 138 in Civ. No. 05-461, and Doc. No. 132 in Civ. No. 05-1348); and Defendants' Motion to Strike Plaintiffs' Motions (Doc. No. 167 in Civ. No. 04-2632, Doc. No. 144 in Civ. No. 05-461, and Doc. No. 138 in Civ. No. 05-1348). The matter has been referred to the undersigned pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a). For the reasons stated below, the Court grants the motion to amend the pretrial schedule, denies the motion for sanctions, and denies the motion to strike.

**I.  FACTUAL AND PROCEDURAL HISTORY**

In these three related actions, several owners of rental properties within the city of St. Paul ("Plaintiffs") generally allege that the City of St. Paul ("City") and various municipal officials ("Defendants") illegally discriminated against them with respect to enforcing building codes regarding Plaintiffs' properties, which are allegedly occupied primarily by "protected-class" renters.

Plaintiffs initially moved for sanctions against Defendants on June 20, 2007, asserting that Defendants had destroyed Truth-In-Sale-of-Housing ("TISH") reports pursuant to a routine document destruction policy well after litigation had commenced, destroyed all emails prior to December 2005, failed to produce St. Paul Public Housing Agency ("PHA") documents, and failed to produce various other documents that Plaintiffs obtained from an anonymous source. Some of these documents were destroyed pursuant to the City's document retention policy because Defendants failed to initiate a litigation hold to ensure the preservation of potentially

2

relevant documents. The City disclaimed possession of other requested documents.

The Court denied Plaintiffs' motion without prejudice on November 13, 2007. Although the Court agreed that Defendants should have initiated a litigation hold when these cases were filed, the Court found that Plaintiffs had not shown any prejudice resulting from the loss of evidence. The Court explained that a party moving for sanctions due to the destruction of evidence must demonstrate that the material would have contained pertinent evidence, but Plaintiffs offered no proof in the form of testimony or other documentary evidence of the content of the destroyed material. Additionally, Plaintiffs failed to show that Defendants had destroyed or withheld documents and electronic information willfully or with an inauspicious motive. The Court therefore permitted Plaintiffs to renew their motion for sanctions if and when they discovered evidence of prejudice due to the destruction or non-production of responsive documents. Plaintiffs appealed the Court's order, which was affirmed by the District Court on January 3, 2008.

Since the Court's order, the parties have engaged in extensive discovery. Plaintiffs served additional discovery requests on Defendants, and Defendants responded. Defendants also conducted additional searches for documents and electronic information. Defendants' counsel arranged a meeting with Plaintiffs' counsel and a PHA representative, and counsel for Plaintiffs and Defendants met and conferred regarding PHA-related documents and a protective order. Because the City did not have the technical ability to restore emails from disaster recovery tapes, Defendants retained a data recovery firm, Kroll OnTrack ("Kroll"), to recover the emails, which were then produced to Plaintiffs. When Plaintiffs complained that the emails were not electronically searchable, Defendants showed them how to search the electronic emails. Defendants also provided a list of TISH reports and included the evaluators' names, addresses,

and phone numbers, so that Plaintiffs could obtain any reports not retained by Defendants from the evaluators personally.

Despite these additional measures, Plaintiffs remain unsatisfied with Defendants' discovery production and practices and have renewed their motion for sanctions. Plaintiffs have also moved to amend the pretrial schedule to allow them to file supplemental expert reports related to the additional discovery. Defendants ask the Court to strike both of Plaintiffs' motions on procedural grounds.

## II. DISCUSSION

### A. Defendants' Motion to Strike

Defendants move to strike Plaintiffs' motion to amend the pretrial schedule because Plaintiffs did not file a memorandum of law in conjunction with the motion, which was filed on February 11, 2008. Plaintiffs ultimately filed their supporting memorandum on March 31, 2008, fourteen days before the hearing. Defendants also move to strike Plaintiffs' renewed motion for sanctions because Plaintiffs did not file a supporting memorandum, either timely or untimely.

The Court denies the motion to strike, finding it preferable to resolve Plaintiffs' motions on the merits. Plaintiffs are advised, however, that when filing a renewed motion, the proper practice is to file a new memorandum of law. This is especially true in the situation at present where much has developed since the original motion, as evidenced by Plaintiffs' four affidavits totaling more than a hundred pages and by the hundreds of pages of additional exhibits.

### B. Plaintiffs' Motion to Amend the Pretrial Schedule

Plaintiffs move to amend the pretrial schedule to permit them to supplement the opinion of their liability expert, Don Hedquist, on the basis of having received discovery relevant to his opinion after the deadline for submission of expert reports in 2006. The Court grants the motion.

4

Substantial discovery has taken place since the deadline for submission of expert reports, which constitutes good cause for amending the pretrial schedule.

Accordingly, Plaintiffs are allowed until June 1, 2008, to file supplemental expert reports. Defendants are allowed until July 1, 2008, to supplement their expert reports. The parties are cautioned that any supplementation must pertain to discovery occurring after August 2006. Dispositive motions must be served, filed, and scheduled by August 1, 2008. This case will be considered ready for trial on January 2, 2009.

### C. Plaintiffs' Renewed Motion for Sanctions

Plaintiffs seek myriad sanctions, including the entry of judgment against Defendants, "pursuant to the Court's inherent power and pursuant to Rule 37 of the Federal Rules of Civil Procedure." (Pls.' Joint Renewed Mot. Sanctions at 1.) Plaintiffs base their motion on four alleged discovery deficiencies: (1) Defendants' non-disclosure of documents related to the PHA since the Court's order of November 13, 2007; (2) the continuing non-disclosure of TISH reports; (3) Defendants' non-disclosure of various documents that Plaintiff obtained from an anonymous source; and (4) Defendants' failure to disclose the deletion of emails and electronic information related to Andy Dawkins, Susan Kimberly, and other City employees.

Although the Court denied Defendants' motion to strike Plaintiffs' motion for sanctions, Plaintiffs' failure to submit a memorandum of law in support of their renewed motion bears further comment. The renewed motion is comprehensive and complex, and the Court has parsed through hundreds of pages of affidavits and exhibits essentially unguided by any argument. When a party seeks such drastic sanctions as Plaintiffs seek here, that party should present solid and thorough arguments in support. Although Plaintiffs have sporadically alluded to their memorandum in support of their first motion, this memorandum does not address any of the

5

events occurring since the Court's order of November 13, 2007, and is therefore of little use.

"The power of the court to impose sanctions for discovery arises from two distinct authorities." E*Trade Sec. LLC v. Deutsche Bank AG, 230 F.R.D. 582, 586 (D. Minn. 2005). If a party fails to comply with a court order or fails to serve responses to discovery requests, the court may sanction the party under Federal Rule of Civil Procedure 37. See Fed. R. Civ. P. 37(b), (d). A court may also sanction a party based on its inherent power "to fashion an appropriate sanction for conduct which abuses the judicial process." Stevenson v. Union Pac. R.R. Co., 354 F.3d 739, 745 (8th Cir. 2004) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991)).

Sanctions for improper document destruction may not be imposed until "the moving party can demonstrate that they have suffered prejudice as a result of the spoliation." E*Trade Sec. LLC, 230 F.R.D. at 592. Accord Stevenson, 354 F.3d at 748 ("There must be a finding of prejudice to the opposing party before imposing a sanction for destruction of evidence."); Keefer v. Provident Life & Accident Ins. Co., 238 F.3d 937, 940 (8th Cir. 2000) (stating that showing of prejudice is required for sanction of dismissal). To establish prejudice, a movant must generally be able to show the contents of the documents at issue, that is, the substance of the evidence to which they were improperly denied access. See LEXIS-NEXIS v. Beer, 41 F. Supp. 2d 950, 955 (D. Minn. 1999) (noting that a movant must show that destroyed material "would have contained evidence pertinent to the present litigation"). As one court has ruled, the movant "must establish a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the [destroyed material] would have produced evidence favorable to his cause." Gates Rubber Co. v. Bando Chem. Indus., 167 F.R.D. 90, 104 (D. Colo. 1996), quoted in LEXIS-NEXIS, 41 F. Supp. 2d at 955. Moreover, the destroyed evidence must be "substantially different in character

6

from that of the preserved information." LEXIS-NEXIS, 41 F. Supp. 2d at 955 (refusing to "presume that the overwritten computer data . . . contained information any more sensitive, or evidence any more damning, that what [movant] expected to find in the first place"). In some situations, the nature of the documents themselves coupled with the extent and circumstances of their destruction might support an inference of prejudice. See E*Trade, 230 F.R.D. at 592 (noting that "the substantial and complete nature of the destruction of the evidence contained in the recorded telephone conversations and hard drives . . . . justifies a finding of prejudice"); see also Stevenson, 354 F.3d at 748 (concluding that finding of prejudice is warranted "by the nature of the evidence destroyed . . . the very fact that it is the only recording of conversations . . . contemporaneous with the accident").

Additionally, "[a] spoliation-of-evidence sanction requires 'a finding of intentional destruction indicating a desire to suppress the truth.'" Greyhound Lines v. Wade, 485 F.3d 1032, 1035 (8th Cir. 2007) (quoting Stevenson, 354 F.3d at 746). Because direct evidence of intent is rare, "a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." Morris v. Union Pac. R.R., 373 F.3d 896, 902 (8th Cir. 2004), quoted in Greyhound Lines, 485 F.3d at 1035.

### 1. Documents Related to the PHA

Plaintiffs contend that Defendants failed to produce documents concerning the City's relationship with the PHA such as cooperative agreements, police service agreements, and documents related to PHA rental properties. Although Plaintiffs concede they received this information from Defendants and the PHA itself in January and February 2008, they nevertheless claim to have been prejudiced because they did not receive the information until

shortly before the dispositive motion deadline. The Court acknowledges that Plaintiffs may have been slightly prejudiced by the timing of the disclosure, but any such prejudice has been remedied by the postponement of the summary judgment hearing and the extension of the remaining pretrial deadlines.

Plaintiffs cite several instances in which they located responsive, PHA-related documents on Defendants' website and from other sources. While it is true that Defendants did not produce the documents, Plaintiffs concede that they now have the materials. Plaintiffs have not shown any remaining prejudice caused by the delay in receiving this information, nor have they shown any intent on the part of Defendants to withhold or destroy these documents.

Plaintiffs next claim that Defendants failed to produce several documents attached to contracts for supplemental police services. Plaintiffs' counsel concedes, however, that "[t]he budget narrative and PHA dwelling leases were attached to each contract." (Shoemaker Aff. ¶ 32.) For the 2006 contract for supplemental police services, Plaintiffs fault Defendants for failing to provide documents referenced in the contract such as quarterly progress reports, calls for service reports, public incident reports, arrest reports, and warrant applications. During a meet-and-confer on this issue, Defendants' counsel agreed to "triple and quadruple check" for such documents. (Shoemaker Aff. Ex. 22.) This statement indicates that Defendants searched for such documents several times and were attempting to comply with Plaintiffs' demands. The record also verifies Defendants' claim that they were "unable" to provide all of the PHA-related documents sought by Plaintiffs because some of the records were no longer in Defendants' possession. (Id. Ex. 1.)

Utterly absent from Plaintiffs' affidavits and exhibits is a showing that they were prejudiced by the non-disclosure of PHA-related documents. Rather, counsel worked together to

8

obtain the documents from an alternative source, the PHA itself. At Defendants' counsel's initiative, counsel for all parties contacted the PHA in December 2007 regarding the production of documents that Defendants were unable to produce. Plaintiffs subsequently served a subpoena on the PHA on January 14, 2008, and the PHA produced responsive documents in February and March 2008. Although Plaintiffs characterize Defendants' inability to produce the PHA-related documents as intentional, the Court is satisfied that Defendants did not have certain documents and produced what they had. It is not reasonable to infer that Defendants must have been withholding documents merely because Plaintiffs were able to obtain those documents from the PHA.

On several occasions in early 2008, Plaintiffs identified additional, specific documents related to the PHA and asked Defendants to produce them. Defendants almost invariably responded or produced the documents within days of the requests. For example, in January 2008, Plaintiffs asked for documents supporting City Council minutes, and one day after the parties held a meet-and-confer, Defendants produced the documents. Defendants also provided various police reports referred to in the supplemental police services contracts in February 2008 after Plaintiffs specifically requested those documents.

To conclude, Plaintiffs have not demonstrated that they suffered prejudice from spoliation or the non-disclosure of PHA-related documents. Plaintiffs also have not shown that Defendants intentionally destroyed documents in an attempt to suppress the truth.

### 2. TISH Reports

On December 6, 2007, Defendants produced a list of all TISH reports done on properties in St. Paul between January 1, 2001 and January 31, 2003. As Defendants had previously and repeatedly told Plaintiffs, the actual reports had been destroyed pursuant to the City's three-year

document retention policy. Defendants also reminded Plaintiffs that they had not even asked for the reports until 2007, approximately two years after they first learned of the reports, and that the City had produced all of the reports in its possession to Plaintiffs at that time.

The list of TISH reports shows that forty-five TISH evaluators prepared reports during the relevant time. Plaintiffs began preparing to depose the evaluators and obtain the missing reports. As the Court previously ordered, the City was to bear the cost of the subpoenas. However, Plaintiffs never subpoenaed the TISH evaluators. Such a failure to pursue discovery is incongruent with Plaintiffs' claim of prejudice.

In January 2006, Plaintiffs discovered a report authored by Connie Sandberg, which evaluated TISH reports from 2005, but which Defendants had not produced. In a letter to Defendants' counsel, Plaintiffs asked for all documents related to this evaluation. Defendants' counsel replied that Ms. Sandberg did not have any responsive information and indicated she had already explained this to Plaintiffs, but she asked Plaintiffs' counsel to provide the relevant emails to aid her in another search for the documents. Plaintiffs' counsel declined to provide the emails, however, because of his "concern" over the City's "tactics." (Shoemaker Aff. ¶ 66.) Defendants nevertheless conducted another search for these particular TISH documents and produced a number of documents to Plaintiffs in February 2008. The Court finds no malfeasance by Defendants or prejudice to Plaintiffs with respect to the Sandberg report and related documents. Moreover, Plaintiffs' own conduct was less than helpful when Defendants sought their assistance so that Defendants could provide Plaintiffs with the information they wanted.

In sum, Plaintiffs simply have not shown that the destruction of or failure to produce the TISH reports has prejudiced them, nor have they shown that Defendants intentionally destroyed or withheld those reports. Further, Defendants gave sufficient information to Plaintiffs to enable

them to obtain the missing TISH reports directly from the evaluators, but Plaintiffs did not attempt to acquire those reports even though Defendants would have borne the cost.

### 3. Documents Obtained from the Anonymous Source

Plaintiffs received fifty-eight documents from an anonymous source, which they assert were in Defendants' possession at one time but which Defendants failed to produce. Assuming that Defendants had the documents at some point in the past, Plaintiffs nevertheless fail to demonstrate prejudice from the nondisclosure by Defendants.

Plaintiffs claim they were prevented from using the documents in depositions and as grounds for additional interrogatories and document requests. Plaintiffs do not explain, however, how they would have used the documents in depositions or how the documents would have predicated additional discovery requests. In addition, Plaintiffs received the anonymous source documents more than a year ago, while discovery was ongoing, yet they did not notice any depositions or submit interrogatories or document requests relative to the documents. Furthermore, many of the documents were in fact produced by Defendants and used in depositions. Given the fragmented and prolonged nature of discovery in this case, it is not surprising that such overlaps were unnoticed. Plaintiffs also contend they were prejudiced by incurring fees and costs to document Defendants' behavior and in bringing this motion for sanctions. However, this argument is meritorious only if Defendants prevail on the motion for sanctions, which they do not.

Not only have Plaintiffs failed to establish prejudice, but there is no basis to conclude that Defendants destroyed any of the anonymous source documents or refused to produce them in an attempt to gain an advantage in this litigation.

### 4. Emails from the Accounts of Andy Dawkins, Susan Kimberly, and Other City Employees

Plaintiffs raise several issues with respect to the production of emails. They first complain that they initially did not receive emails from City employee Susan Kimberly's account. Defendants explain, as they have repeatedly explained to Plaintiffs, that Ms. Kimberly's <u>entire</u> email account was deleted on April 20, 2006, four months after she left her employment with the City. Consequently, her emails were not on the disaster recovery tapes restored by Kroll. Furthermore, Plaintiffs have not shown that Ms. Kimberly's emails would have been significant or even relevant. They did not even identify Ms. Kimberly as an individual from whom they wanted emails until June 6, 2007, more than a year after the account was deleted. Plaintiffs did not take Ms. Kimberly's deposition. Even if Defendants had placed a litigation hold on emails, Ms. Kimberly's emails would not have been included because she is not a Defendant and was not an employee of NHPI, the Mayor's Office, or the City Council.

With respect to City Council President Kathy Lantry's emails, Plaintiffs received one-half of the emails on December 10, 2007, and the other half on January 9, 2008. Plaintiffs question why they did not receive all the emails on the December date. The obvious answer is that Kroll produced the emails in batches when they recovered them, and Defendants had nothing to do with the timing of Kroll's process. Plaintiffs are also skeptical of the small size of Ms. Lantry's account as compared to the accounts of other council members. They similarly question the size of Mr. Dawkins' email account, even though Mr. Dawkins explained that he rarely used email as a form of communication during his employment with the City.[1] Plaintiffs urge the Court to presume nefarious conduct on the part of the City due to the small size of the

---

[1] Mr. Dawkins' last date of employment with the City was December 21, 2005.

recovered email accounts. Such a presumption is unsupportable, however, because Plaintiffs' position is based on nothing more than speculation.

On February 22, 2008, Defendants' counsel provided a batch of redacted emails to Plaintiffs. Significantly, Plaintiffs already possessed these emails in unredacted form. Plaintiffs now accuse Defendants of delaying the production in order to interfere with Plaintiffs' ability to timely file its motion for sanctions. It is difficult to fathom how Plaintiffs could have been prejudiced by the production of less evidence than they already had, and the Court rejects this argument.

Plaintiffs next complain that Defendants produced very few emails from the years preceding 2005. Other than the reasons already discussed, Defendants offer an additional reason: because Plaintiffs' counsel had explicitly limited the discovery request to emails from December 2005 onward, in a letter dated June 6, 2007.

With respect to the email issue in general, Plaintiffs allege that they "were prejudiced by Defendants' delayed production of emails and failure to produce emails from relevant time periods." (Engel Aff. ¶ 26.) To demonstrate prejudice, Plaintiffs cite passages from other emails that were produced and repeatedly assert "that many more emails of this character would have been available to Plaintiffs for their claims." (Engel Aff. ¶ 29(a), (c), (d), (e), (f), (g), (h), (i), (j)(iv), (l), (m), (n), (o), (p), (q), (s), (t), (u).) This recitation of evidence and conclusory assertion constitute no more than mere speculation that the destroyed or withheld material would have contained evidence favorable to Plaintiffs' claims. Moreover, Plaintiffs have not shown that the destroyed or withheld evidence was significantly different from the information Plaintiffs already possess. Finally, Plaintiffs have not demonstrated that Defendants intentionally destroyed or withheld documents in an attempt to suppress the truth.

13

5. **Conclusion**

The Court denies Plaintiffs' motion for sanctions because Plaintiffs cannot demonstrate prejudice resulting from destroyed or non-disclosed documents. It is of no small significance that Plaintiffs have now received, if not from Defendants than from some other source, nearly all of the documents and information they requested. Plaintiffs have offered only speculation as to what the unavailable documents might have contained, and Plaintiffs have failed to show that Defendants destroyed or withheld evidence to gain an advantage in litigation.

There is no question that Defendants' discovery production in these cases was far from ideal. Clearly, Defendants should have put a litigation hold in place. However, there is no cause to punish Defendants or deter them from like conduct in the future. Any harm to Plaintiffs has been adequately remedied by the actual production of information, the postponement of the summary judgment hearing, and the extension of time to file supplemental expert reports. Accordingly, the Court denies Defendants' renewed motion for sanctions.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion to Amend the Pretrial Scheduling Order (Doc. No. 157 in Civ. No. 04-2632, Doc. No. 134 in Civ. No. 05-461, and Doc. No. 128 in Civ. No. 05-1348) is **GRANTED** as follows:

    a. Plaintiffs shall serve their supplemental expert reports by June 1, 2008;

    b. Defendants shall serve their supplemental expert reports by July 1, 2008;

    c. Dispositive motions shall be served, filed, and scheduled by August 1, 2008; and

  d. This case shall be ready for trial on January 2, 2009.

2. Plaintiffs' Renewed Motion for Sanctions (Doc. No. 161 in Civ. No. 04-2632, Doc. No. 138 in Civ. No. 05-461, and Doc. No. 132 in Civ. No. 05-1348) is **DENIED**.

3. Defendants' Motion to Strike Plaintiffs' Motions (Doc. No. 167 in Civ. No. 04-2632, Doc. No. 144 in Civ. No. 05-461, and Doc. No. 138 in Civ. No. 05-1348) is **DENIED**.

Dated: May 8, 2008

               s/ Susan Richard Nelson
               SUSAN RICHARD NELSON
               United States Magistrate Judge