# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Clear Channel Outdoor, Inc. a Delaware corporation, | US District Court Judge Donovan W. Frank |
| | Magistrate Judge Arthur J. Boylan |
| | Civil File No. 06-CV-3304 |
| Plaintiff, | |
| v. | |
| The City of Saint Paul, | |
| Defendant. | |

## PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Clear Channel Outdoor, Inc. ("Clear Channel") submits this supplemental memorandum per the Court's March 6, 2009 Order. Almost a year and a half ago, the parties brought cross motions for summary judgment. By way of this memorandum, Clear Channel will outline succinctly the issues that remain to be decided by the Court and the supporting legal authority. This memorandum is merely a summary of the arguments Clear Channel believes are most relevant; Clear Channel does not waive any of the arguments set forth in its previous memoranda.

The specific legal issues that this Court is being asked to answer as part of Clear Channel's motion for partial summary judgment are as follows:

1.  Is the amendment to St. Paul Legislative Code § 64.301(a) banning billboard extensions invalid as the ordinance is unreasonable, arbitrary, and capricious?

2. Is the amendment to and enforcement of Code § 64.301(a) as to Clear Channel's use of extensions invalid under Minn. Stat. § 462.357, Subd. 1c, which prohibits the enactment, amendment, or enforcement of an ordinance providing for the elimination or termination of a use by amortization?

3. Does enforcement of Code § 64.301(a) as to Clear Channel's use of billboard extensions violate Minn. Stat. § 462.357, Subd. 1e that grants the right to continue legal nonconforming uses, and St. Paul Legislative Code § 62.106(a) that also allows nonconforming uses to continue?

4. Does enforcement of Code § 64.301(a) as to Clear Channel's use of billboard extensions violate the Minnesota Outdoor Advertising Control Act, Minn. Stat. § 173.17?

## I. THE AMENDMENT BANNING EXTENSIONS ON BILLBOARDS IS UNREASONABLE, ARBITRARY, AND CAPRICIOUS AND THEREFORE INVALID AS A MATTER OF LAW.

The City of St. Paul's (the "City") ban on extensions lacks any discussion or finding in the record that its action has a reasonable relationship to public health, safety, or welfare.[1]

### A. The city is required to articulate specific reasons related to health, safety or welfare to validate its action.

Cities are authorized to enact zoning ordinances "for the purpose of promoting the public health, safety, morals, and general welfare." Minn. Stat. § 452.357, Subd. 1. An ordinance is ultra vires and, thus, without legal force or effect if it is "beyond the limits of

---

[1] (See Plaintiff's Response Mem. of Law in Opp'n to Def. Mot. for Summ. J. dated October 5, 2007 at 5-10, 20-25; Nightingale Aff. Exs. 1-15; Larson Aff. Ex. D-G.)

the power granted" to the enacting political subdivision. *Lilly v. City of Minneapolis*, 527 N.W.2d 107, 113 (Minn. Ct. App. 1995) A city must, at a minimum, have articulated reasons reasonably related to public health, safety, morals, and welfare recorded or reduced to writing for a zoning ordinance to be valid. *Honn v City of Coon Rapids*, 313 N.W.2d 409, 416 (Minn. 1981). If a city council fails to record the basis for a zoning determination at the time it acts, the zoning action is presumed arbitrary. *R.A. Putnam & Assoc., Inc. v. City of Mendota Heights*, 510 N.W.2d 264, 267 (Minn. Ct. App. 1994). To the extent the City claims aesthetics as a basis for the amendment, Minnesota courts have already determined that an ordinance driven purely by aesthetics is not a valid land use regulation. *See, e.g., County of Wright v. Kennedy,* 415 N.W.2d 728, 732 (Minn. Ct. App. 1987)("Historically, courts have been reluctant to allow governing authorities to base zoning ordinances on esthetic considerations."); *White Bear Docking & Storage, Inc. v. City of White Bear Lake,* 324 N.W.2d 174, 177-78 (Minn. 1982) (aesthetics "will not be the sole justification for approval or denial" of a permit).

**B.      There is no factual basis in the record to support a finding that the amendment is necessary to prevent and abate a nuisance, or to protect health, safety or welfare.**

The City's record in this matter is devoid of any articulated reasons based upon health, safety or welfare for banning billboard extensions after allowing the use for over 75 years.[2]     The City's lack of record evidences that its decision was not based upon reason, but upon the City's whim to eradicate the rights of billboard owners.    Therefore, as a matter of law, this Court must declare that Code § 64.301(a) is invalid.

---

[2] (See Nightingale Aff. Exs. 1-15; Larson Aff. Exs. D-G.)

## II. THE CITY'S ACTIONS ARE BARRED BY THE STATE AMORTIZATION STATUTE.

Minnesota law prohibits amortization of any use that was lawful at the time of its inception, regardless of whether it is a conforming or legal nonconforming use.

Minn. Stat. § 462.357, Subd. 1c states in relevant part as follows:

**Subd. 1c. Amortization prohibited.** Except as otherwise provided in this subdivision, a municipality must not enact, amend, or enforce an ordinance providing for the elimination or termination of <u>a use</u> by amortization <u>which use was lawful at the time of its inception</u>. (emphasis added.)

Minn. Stat. § 462.357, Subd. 1c.

It is undisputed that when Clear Channel began using extensions on its billboards, the use was lawful. Therefore, the use of extensions falls within the ambit of Minn. Stat. § 462.357, Subd. 1c. The City's enactment of the amendment to Code § 64.301(a), and its subsequent attempts to enforce the ordinance, constitute an illegal termination of Clear Channel's use of extensions by amortization. On June 20, 2006, the City wrote Clear Channel stating, "*You are hereby advised that all existing billboard extensions must be removed for the billboards you own within the City of Saint Paul either 90 days after their installation date or Tuesday, August 1, 2006, which is earlier. Further, no new extensions may be applied to billboards within the City limits.*"[3] The amortization prohibition of the statute specifically proscribes the City's action.

## III. THE CITY'S ACTIONS VIOLATE MINN. STAT. § 462.357, SUBD. 1E AND ITS OWN CODE ALLOWING NONCONFORMING USES TO CONTINUE.

Nonconforming uses have the right to continue. Minn. Stat. § 462.357, Subd. 1e.

---

[3] (Nightingale Aff. ¶ 17, Ex. 16.)

It is undisputed that billboards were nonconforming uses at the time the amendment to Code § 64.301(a) was enacted.[4]

The Court has been presented with two conflicting positions regarding the legal status of extensions. Clear Channel asserts that the billboard and extension constituted the legal nonconforming use prior to and after the amendment. Therefore, the use of the billboard and extension can continue unless that use is discontinued for a period of more than one year.[5]  To obviate this, the City asserts that an extension is a conforming use attached to a nonconforming billboard.  Using this premise, it argues that if an extension was conforming prior to the amendment, any billboard that did not have an extension at the exact moment the amendment was enacted is barred from having an extension.[6]

A.     **The City's distinction between a billboard and its extension is contrary to Minnesota case law, the City Code, and the Minnesota Outdoor Advertising Control Act.**

The City's assertion that, although the entire billboard is a nonconforming use, the extension of the message on the billboard is a conforming structure simply attached to a nonconforming use[7] is contrary to both fact and law.  The most cursory examination of the photographs showing Clear Channel's use of billboards extensions[8] conclusively demonstrates that the extensions are an integral part of the entire advertising display. Furthermore it defies logic to suggest that while a billboard is a nonconforming use, an

---

[4] (City's Mem. in Supp. of Mot. for Summ. J. at 13.)

[5]  The City has not asserted abandonment of any of Clear Channel's billboards or extensions under Minn. Stat. § 462.357, Subd. 1e(a)(1) in this action.

[6] (See City's Mem. in Supp. of Mot. for Sum. J. dated September 11, 2007 at 13-15; City's Mem. in Opp'n of Pl.'s Summ. J. Mem. dated October 5, 2007 at 12-13.)

[7] (City's Mem. in Supp. of Mot. for Summ. J. at 14.)

[8] (First Muller Aff. Exs. B1-B7.)

attachment to the billboard, which is part of the billboard's message, is conforming. This *modus operandi* previously adopted by the City of dividing the billboard into component parts in order to eliminate a part of the billboard has been emphatically rejected by the Minnesota Court of Appeals.[9]

There is no support for the distinction in the St. Paul Legislative Code, which contains no definition of "billboard extension", and provides no basis or standard by which the City can differentiate between a billboard and a billboard extension. Under the Code, a Billboard is an Advertising Sign larger than fifty (50) square feet. Code § 66.104.B. Indeed the prior statements and enactments by the City are completely contrary to the assertion it now makes that the billboard and the extension are separate. City staff clearly considers extensions to be a part of the display message.[10] While the City previously required that an extension be "an integral part of the design" of the advertisement,[11] it now claims it is a use completely distinct from the billboard. [12]

---

[9] *See Clear Channel Outdoor Advertising, Inc. v City of St. Paul*, 63 N.W.2d 343 (Minn. Ct. App. 2004). In that case, the City advanced the position that the court must consider the display surface of a billboard as a component separate and distinct from the sign structure. The Court rejected the City's division of the billboard into component parts stating that it leads to "…an absurd result that contradicts the purposes of both the city's sign ordinances and the law on nonconforming uses..." *Id.* at 347-48.

[10] In a letter to Clear Channel City staff wrote, "As you may be aware, new legislation was recently enacted by the City Council prohibiting the use of billboard extensions, that is, the use of cutouts or lettering as part of the display message which extend beyond the basic display surface area of the billboard." (Nightingale Aff. ¶ 17, Ex. 16.)

[11] Code § 64.301(g)(2005).

[12] (See Pl.'s Response Mem. of Law In Opp'n to Def.'s Mot. for Summ. J. dated October 5, 2007 at 16-18; Pl.'s Mem. of Law In Supp. of its Mot. for Partial Summ. J. dated September 11, 2007 at 9-15.)

The Minnesota Outdoor Advertising Act also precludes this interpretation, as it treats extensions as part of the billboard. Minn. Stat. §173.02, Subd. 2, clearly defines an Advertising Device[13] to include "other attachments used in connection therewith." An extension is an attachment used in conjunction with the display; extensions are a part of the billboard. The City is prevented by the language of this statute from treating the extension (attachment) as a use separate from the billboard itself.[14]

**B. Under Minn. Stat. § 462.357, Subd. 1e, Clear Channel has a right to continue its use of billboard extensions.**

Nonconformities may be continued unless discontinued for a period of more than one year. Minn. Stat. § 462.357, Subd. 1e(a). The City has not asserted abandonment. Although a municipality may impose reasonable regulations upon nonconformities to abate nuisances and to protect the public health, welfare, or safety, the City's record in this matter is devoid of any articulated permissible reasons to ban extensions as discussed above. As such, the amendment banning billboard extensions is in violation of Minn. Stat. § 462.357, Subd. 1e.

**C. Even under the City's position, Clear Channel's use of extensions on all of its billboards may be continued.**

In an attempt to ban extensions on all but 19 billboards, the City urges the Court to

---

[13] "Advertising Device" means any billboard, sign, notice, poster, display, or other device visible to and primarily intended to advertise and inform or to attract or which does attract the attention of operators and occupants of motor vehicles and shall include any structure erected primarily for use in connection with the display of any such device and all lighting *or other attachments used in connection therewith* except "star city" signs erected under Section 173.085. (emphasis added) Minn. Stat. §173.02, Subd. 2.

[14] (See Pl.'s Mem. of Law In Supp. of its Mot. for Partial Summ. J. dated September 11, 2007 at 16-18.)

look at a snapshot in time to determine if Clear Channel's use of extensions was "existing" at the time the amendment was enacted, disregarding the history and nature of the use.[15] Several jurisdictions have rejected this analysis, including Minnesota.[16]

The Minnesota Court of Appeals in *Lam v. City of St. Paul,* 714 N.W.2d 740 (Minn. Ct. App. 2006) has recognized that although a certain activity is not occurring on the exact date an ordinance banning the use is enacted, a lawful use does not cease to exist and will constitute a nonconforming use that may continue. Likewise, the Supreme Court of Massachusetts[17], the Supreme Court of Pennsylvania[18] the Supreme Court of Wisconsin[19], the Supreme Court of Arizona[20], and the Michigan Court of Appeals[21] all

---

[15] (See City's Mem. in Supp. of Mot. for Sum. J. dated September 11, 2007 at 13-15.)

[16] (See Pl.'s Reply Mem. of Law In Supp. of its Mot. for Partial Summ. J. dated October 12, 2007 at 14-15.)

[17] Although a temporary use may not be currently active when an ordinance is passed, it still constitutes a nonconforming use. *Morin v. Board of Appeals of Leominster*, 352 Mass. 620, 227 N.E.2d 466 (Mass. 1967)]

[18] The use in question need not be in actual operation at the time of the ordinance's enactment in order to retain its nonconforming status. *Latrobe Speedway, Inc. v. Zoning Hearing Board of Unity Township, Westmoreland County*, 720 A.2d 127, 130 (Pa. 1998); *Haller Baking Co.*, 145 A. 77 (Pa. 1928).

[19] Where an ordinance was passed making dairy farms nonconforming while a dairy farm had suspended operations it had a right to continue. *State Ex Rel. Schaetz v. Manders*, 238 N.W. 835 (Wis. 1931).

[20] It was not necessary to show that business was continuously conducted on the premises when ordinance banning the use was passed, "as the amount or continuity of the business transacted is immaterial once the business is shown to have been commenced." *Kubby v. Hammond*, 198 P.2d 134, 139 (Ariz 1948)

[21] A determination of use requires considerations beyond merely assessing conditions on the date an ordinance is passed that makes the use nonconforming, but must "involve considering the historical use of the property.", and "Restricting consideration of the particular conduct or activities to that occurring only on the date the ordinance is passed would result in a capricious evaluation." *Essexville v. Carrollton Concrete Mix, Inc.*, 2007 WL 942119 (Mich. Ct. App. 2007) (See Pl.'s Reply Mem. of Law In Supp. of its Mot. for Partial Summ. J. dated October 12, 2007 at 9-10.)

follow the same rationale. It is not the enactment date of an ordinance that determines the right to continue a use, but the historical use.

The same analysis applies here. It is undisputed that extensions have been used on the bulletin sized billboards for the past 75 years and that in the nine years Clear Channel has owned the billboards, extensions have been used on all of the 124 bulletin sized faces.[22] Clear Channel has never abandoned its use on any of the bulletin-sized billboards prior to the City's amendment of Code § 64.301(a) and the City has not alleged any facts disputing this. Taking into consideration the historical use of extensions on billboards, Clear Channel has a right to continue the use of extensions on all of its bulletin sized billboards and enforcement of Code § 64.301(a) violates Minn. Stat. § 462.357, Subd. 1e.

## IV. THE CITY'S ACTIONS ARE CONTRARY TO THE MINNESOTA OUTDOOR ADVERTISING CONTROL ACT.

The Minnesota Outdoor Advertising Control Act regulates the placement and design of "advertising devices" in areas adjacent to Interstate or Primary Highways. Minn. Stat. Ch. 173. To the extent that the City's ordinance purports to regulate outdoor advertising devises within business and commercial areas adjacent to interstate and state trunk highways, that ordinance is abrogated by state law.

Clear Channel currently owns and operates 77 bulletin size billboard structures in the City of St. Paul containing 124 faces.[23] All of these 124 bulletin faces have utilized

---

[22] (First Muller Aff. ¶¶ 2, 4, 7-9; Second Muller Aff. 5.)
[23] (First Muller Aff. ¶ 4.)

extensions.[24] Of the 124 bulletin faces, 109 of them are adjacent to Interstate or Primary Highways as defined in Minn. Stat. § 173.02.[25] Under the Act, extensions are encompassed in the definition of advertising device and are subject to the provisions of Minn. Stat. § 173.17(c), which requires just compensation for the removal of advertising devices. Therefore, the City's enforcement of the amendment is violation of the Act unless it pays Clear Channel just compensation for the extensions.[26]

**BERNICK, LIFSON, GREENSTEIN, GREENE, & LISZT, P.A.**

Dated: April 10, 2009

s/David K. Nightingale
David K. Nightingale #148088
Marvin A. Liszt #63848
5500 Wayzata Boulevard, Suite 1200
Minneapolis, Minnesota 55416
(763) 546-1200

*Attorneys for Plaintiff*

---

[24] (Second Muller Aff. ¶ 5.)
[25] (Second Muller Aff. ¶ 2-3.)
[26] (See Pl.'s Response Mem. of Law In Opp'n to Def.'s Mot. for Summ. J. dated October 5, 2007 at 25-26.)